**SIMMONS HANLY CONROY LLC**
Crystal Foley (SBN 224627)
cfoley@simmonsfirm.com
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555

Mitchel M. Breit (*pro hac vice*
forthcoming)
mbreit@simmonsfirm.com
112 Madison Avenue
New York, New York 10016-7416
Phone: (212) 784-6400

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| TOYA EDWARDS on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>    v.<br><br>WALMART, INC.<br><br>         Defendant. | Case No.: __2:18-cv-9655__<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Toya Edwards individually and on behalf of all others similarly situated, brings this action against Defendant Walmart, Inc. ("Walmart"). The following allegations are based upon personal knowledge as to Plaintiff's own conduct, the investigation of counsel, and upon information and belief as to the acts of others.

## INTRODUCTION

1.      Walmart is the world's largest retail company operating thousands of retail stores worldwide.

2.      Walmart stores sell all types of products to the American public, including toys, groceries, sports and outdoor equipment, electronics, home goods, school supplies, apparel, cosmetics, health and wellness products, and many more.

3.      As part of their health and wellness department, Walmart stocks and sells brand name over-the-counter drugs, such as Tylenol® products.

4.      In addition to selling brand name over-the-counter drugs, Walmart also produces, manufactures, markets, distributes, and sells a generic version of certain over-the-counter drugs under its own brand Equate™ to families, children, and other consumers.

5.      Walmart's Equate™ products include analgesic or pain-relieving medicines using acetaminophen.

6.      In 2005, Johnson & Johnson Consumer Inc. introduced the name brand Tylenol® Extra Strength Rapid Release Gels to the American public as "specially designed" gelcaps "with holes to allow [for] the release of powerful medicine *even faster than before*."[1] Three years later, Tylenol® PM Rapid Release Gels were launched with the same promises.[2]

7.      Walmart then introduced its own version of the Tylenol® Extra Strength Rapid Release Gels called Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps.

---

[1] https://www.tylenol.com/news/about-us (last accessed 11.15.2018) (emphasis added).
[2] *Id.*

CLASS ACTION COMPLAINT



3

8.      Walmart also introduced its own version of the Tylenol® Extra Strength PM Rapid Release Gels called Equate™ Extra Strength Acetaminophen PM Rapid Release Gelcaps.



4

---

[3] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-Release-Gelcaps-500-mg-24-Ct/10403810 (last accessed 11.15.2018).
[4] https://www.walmart.com/ip/4-Pack-Equate-Extra-Strength-Acetaminophen-PM-Rapid-Release-Gelcaps-500-mg-20-Ct/625528959 (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

9.      Since the release of its generic versions of the rapid release gelcaps, Walmart has misled and continues to mislead consumers about the nature, quality, and effectiveness of its so-called rapid release Equate™ products through advertising and labeling.

10.     In particular, the Walmart brand Equate™ rapid release gelcaps ("Class Rapid Release Gelcaps") are marketed as comparable to Tylenol® Extra Strength Rapid Release Gels even though, on information and belief, they do not contain the unique laser drilled holes of Tylenol® Extra Strength Rapid Release Gels. The Equate™ rapid release gels are nonetheless labeled and advertised as a "rapid release" product.

11.     Despite the technology used for the Class Rapid Release Gelcaps and despite what Walmart's labeling and advertising would have consumers believe, the term "rapid release" does not actually mean that the drug works faster for consumers than non-rapid release products. The same is true of the brand name Tylenol® rapid release products.

12.     Walmart has long known or should have known that traditional, non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its rapid release products.

13.     In fact, a new study demonstrates that Walmart's Equate™ acetaminophen rapid release gelcaps dissolve *slower* than the Walmart non-rapid release products.[5]

14.     Yet, Walmart charges a premium for its rapid release gelcaps.

---

[5] Kucera, Jessop, Alvarez, Gortler, Light, *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

15.    Walmart sells its rapid release gelcaps with false, misleading, unfair, deceptive labeling and marketing in an effort to dupe consumers into purchasing these gelcaps for prices that exceed their true value. Walmart has pursued and continues to pursue this course of conduct in order to profit off of unassuming, unwitting consumers looking for the fastest pain-relief possible from an over-the-counter acetaminophen product.

16.    Plaintiff and Class members are consumers who were misled or deceived by Walmart's false, misleading, unfair, and deceiving representations and as a result purchased the Equate™ rapid release gelcaps.

17.    Plaintiff would not have purchased the Class Rapid Release Gelcaps had Walmart disclosed accurate information about the products and not misled them into believing that the Class Rapid Release Gelcaps would provide faster relief than other, cheaper acetaminophen products, such as the traditional Equate™ tablets.

18.    Plaintiff, thus, brings this class action against Walmart on behalf of herself and on behalf of all individuals who purchased the Class Rapid Release Gelcaps (the "Class") seeking damages and appropriate equitable relief given that Walmart's conduct violated well-established contract, tort, and consumer protection laws of California and the United States.

## PARTIES

19.    Plaintiff Toya Edwards is a citizen and resident of Lakewood, Los Angeles County, California.

20.    Defendant Walmart Inc. is a Delaware corporation, with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716.

## JURISDICTION AND VENUE

21.    This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because at least one member of the proposed

class is a citizen of a state different from Walmart; the amount in controversy exceeds $5,000,000, exclusive of interests and costs; the proposed class consists of more than 100 members; and none of the exceptions under the subsection apply to this action.

22.     This Court has jurisdiction over Walmart because it has sufficient minimum contacts in California and otherwise intentionally avails itself of the markets within California through the operation of several Walmart stores within the state as well as the promotion, sale, marketing, and distribution of its products, such that exercise of jurisdiction by this Court is proper and necessary.

23.     Venue is proper in this District under 28 U.S.C. § 1391 because Walmart conducts substantial business in this District and a substantial part of Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS
## ACETAMINOPHEN GENERALLY

24.     Acetaminophen, also called paracetamol or N-acetyl-para-aminophenol (APAP), is an over-the-counter pain reliever and fever reducer that comes in a variety of forms: liquid suspension, tablets, capsules, and gelcaps.[6]

25.     In any form, acetaminophen is used to treat a variety of common conditions including headaches, muscle aches, arthritis, backaches, toothaches, colds, fevers, acute pain,[7] chronic pain,[8] etc.

26.     Typically, it is the first treatment recommended for *any* mild to moderate pain.[9] Therefore, acetaminophen is one of the most commonly used drugs

---

[6] *Id.*
[7] https://www.drugs.com/acetaminophen.html (last accessed 11.15.2018).
[8] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.15.2018).
[9] *Id.*

in the world when it comes to pain mitigation representing an estimated global market value of over $350 million annually.[10] It is even included on the World Health Organization List of Essential Medicines.[11]

27.     Given the wide-spread use of acetaminophen, both the *quality* and *value* of acetaminophen products present important public health, consumer safety, and economic concerns.[12]

**WALMART SEEKS TO CAPITALIZE OFF OF JOHNSON & JOHNSON'S SUCCESS OF TYLENOL® NAME BRAND ACETAMINOPHIN PRODUCTS BY CREATING GENERICS**

28.     Tylenol® is the well-recognized brand name of acetaminophen[13] produced, manufactured, and distributed by Johnson & Johnson.

29.     Johnson & Johnson currently lists 27 Tylenol® products on its Tylenol® website, including: 5 oral suspension products, 6 liquid products, 1 chewable product, 1 tablet product, 1 coated tablet product, 11 caplet products, and 2 gelcap products.[14] All but one of the 27 products contain acetaminophen.[15] Johnson & Johnson has profited and continues to profit greatly from this Tylenol® product line.

30.     Generic brands, like the Walmart's Equate™ brand, thus, seek to mimic the product offerings of Johnson & Johnson selling the generic version of the Tylenol® products for a price less than the name brand equivalent.

---

[10] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

[11] WHO. World Health Organization Model List of Essential Medicines. August 2017 ed.  http://www.who.int/medicines/publications/essentialmedicines/en/2017 (last accessed 11.15.2018).

[12] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

[13] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.15.2018).

[14] https://www.tylenol.com/products (last accessed 11.15.2018).

[15] *Id*. Tylenol® PM Simply Sleep Nighttime Sleep Aid does not contain acetaminophen.

CLASS ACTION COMPLAINT

31.     Walmart has done this with several Tylenol® products, including Tylenol® Extra Strength Rapid Release gels and the generic versions are profitable for Walmart.

32.     But the profitability on the Class Rapid Release Gelcaps comes at much too high a price, both figuratively and literally: consumer deception about the true nature, quality, and value of the product.

## THE DECEPTIVE MARKETING OF RAPID RELEASE TYLENOL®

33.     Johnson & Johnson introduced Tylenol® Extra Strength Rapid Release Gels in 2005 claiming that these rapid release gelcaps are "specially designed…to allow the release of powerful medicine *even faster than before*."[16] In 2008, Tylenol® PM Rapid Release Gels launched utilizing the same "rapid release" technology and the same or similar advertising.

34.     This claim – that these rapid release gelcaps worked even faster than before – became associated with the regular and PM versions of Tylenol® Extra Strength Rapid Release Gels.

35.     In 2009, the rapid release gels were recalled and were not re-released until 2017.[17]

36.     The national return to the market of the rapid release gels represented Tylenol's "biggest product launch in years" and, thus, the marketing campaign "involved triple the investment" that Johnson & Johnson would normally spend all to encourage consumers to find "fast working pain relief."[18]

---

[16] https://www.tylenol.com/news/about-us (last accessed 11.15.2018) (emphasis added).
[17] https://shoppermarketingmag.com/headache-sufferers-directed-walgreens (last accessed 11.15.2018).
[18] *Id.*

8
CLASS ACTION COMPLAINT

37.     "In the first month, [the campaign] reached over 25 million shoppers on their mobile device across five key markets, resulting in both category and Tylenol share growth at Walgreens."[19] Consumers were inundated with the campaign messaging in stores and online.[20]

38.     With its marketing, product labeling, and affirmative representations, Johnson & Johnson sought and continues to seek to further the falsehood: that rapid release Tylenol® actually provides faster relief than other cheaper acetaminophen products.

39.     It did this not only by explicitly making the claim, but also by using buzz words that emphasized the speed, fast-acting nature, and unique laser-drilled holes of the rapid release gelcaps.

40.     For example, Johnson & Johnson advertised the rapid release gelcaps claiming it:

WORKS AT THE
**SPEED OF LIFE**

**Only TYLENOL® Rapid Release Gels**
HAVE LASER-DRILLED HOLES. THEY RELEASE MEDICINE FAST FOR FAST PAIN RELIEF[21]

41.     Other marketing statements include, but are not limited to, the following:

(a) "Tylenol® Rapid Release Gels start to dissolve in seconds and effectively relieve pain at rapid speed"[22]

---

[19] *Id.*
[20] *Id.*
[21] https://www.ebay.com/itm/Tylenol-Extra-Strength-290-Rapid-Release-Liquid-Gels-FAST-SHIPPING-/232796445534 (last accessed 11.15.2018).
[22] https://www.youtube.com/watch?v=_bZcPNyYu1o (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

(b)  "Rapid release. Rapid relief."[23]

(c)  "Only Tylenol® Rapid Release Gels have laser drilled holes. They release medicine fast for fast pain relief. Fast enough to keep up with you, so you can keep up with life."[24]

(d)  "Fast Working Pain Relief"[25]

(E)  "New Tylenol® Rapid Release Gels. Gelcaps with specially designed holes to release powerful medicine even faster than before."[26]

(f)  "When you have pain from a pounding headache and you need relief, trust Tylenol® Rapid Release… Tylenol® Rapid Release Gelcaps dissolve quickly and relieve your headache pain fast."[27]

42.  Johnson & Johnson's marketing campaign has been successful in getting the public to believe that the rapid release gelcaps are faster acting than other Tylenol® products, when in fact they are *slower*.

43.  Consumer reviews and comments indicate that consumers have been deceived and confused by Johnson & Johnson's representations; and some even notice after purchase that Tylenol® Rapid Release Gelcaps do not work faster than regular, non-rapid release, acetaminophen Tylenol® products that are cheaper.[28]

---

[23] https://cargocollective.com/jeremybernstein/The-Feel-Better-Fast-Show (last accessed 11.15.2018).

[24] https://www.youtube.com/watch?v=DzczfGN0NB4 (last accessed 11.15.2018).

[25] https://www.effie.org/case_database/case/SME_2018_E-375-981 (last accessed 11.15.2018).

[26] https://www.youtube.com/watch?v=cKp4xPNTrPY (last accessed 11.15.2018).

[27] https://www.youtube.com/watch?v=LN0GeRuMouk (last accessed 11.15.2018).

[28] *See e.g.,* http://www.paininthehead.org/2006/04/13/rapid-release-does-not-equal-rapid-relief/comment-page-1/ (last accessed 11.6.2018); https://www.tylenol.com/products/tylenol-rapid-release-gels#bv-product-reviews (last accessed 11.6.2018); https://www.tylenol.com/products/tylenol-rapid-release-gels (last accessed 11.6.2018); https://answers.yahoo.com/question/index?qid=1006050815308&page=1 (last

CLASS ACTION COMPLAINT

44.     Despite the fact that the "rapid release" gels are not rapid release and do not work faster than other, traditional acetaminophen products, Johnson & Johnson sells its rapid release gelcap products at a higher price than its other equally effective and equally fast-acting acetaminophen products that are not classified as "rapid release."

## WALMART'S FALSE, MISLEADING, UNFAIR AND DECEPTIVE MARKETING AND LABELING OF THE CLASS RAPID RELEASE GELCAPS

45.     Other companies followed Johnson & Johnson's labeling, marketing, advertising, and pricing lead and now, in general, acetaminophen products labeled, advertised, or marketed as "rapid release" or "fast-release" are sold on average at a price 23% higher than those acetaminophen products not making these rapid or fast-release representations.[29]

46.     Walmart is one of the companies that followed Johnson & Johnson's lead.

47.     Walmart sells its Class Rapid Release Gelcaps at a higher price than its other equally effective and equally fast-acting acetaminophen products that are not classified as "rapid release."

48.     Walmart currently lists 6 Class Rapid Release Gelcap products on its website, including: Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps in quantities of 24, 100, and 225 gelcaps; Equate™ Extra Strength Acetaminophen PM Rapid Release Gelcaps in quantifies of 20 and 80 gelcaps; and

accessed 11.6.2018); https://answers.yahoo.com/question/index?qid=1006050815308&page=2 (last accessed 11.6.2018); https://www.reviewstream.com/reviews/?p=46385 (last accessed 11.6.2018); https://prawntail.com/do-tylenol-rapid-release-gelcaps-really-work-faster-than-regular-tylenol/ (last accessed 11.6.2018).
[29] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

Equate™ Sinus Congestion & Pain Acetaminophen Rapid Release Gelcaps in quantities of 48 gelcaps.[30]

49.   Not all caplets and tablets are offered in the same quantities as the Class Rapid Release Gelcaps. However, a comparison of the prices of the Class Rapid Release Gelcaps to the equivalent caplets and tablets in the same counts demonstrates that Walmart charges more for the Class Rapid Release Gelcaps than its equivalent non-rapid release acetaminophen products.

50.   Currently, Walmart sells a regularly priced 100 count bottle of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500mg, at $4.92, while a regularly priced 100 count bottle of Equate™ Extra Strength Acetaminophen tablets, 500 mg, costs $2.48.[31] There is a $2.44 price difference between the Class Rapid Release Gelcaps and the non-rapid release product in this count.

51.   A regularly priced 225 count bottle of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500 mg, is priced at $9.97, while a regularly priced bottle of Equate™ Extra Strength Acetaminophen caplets, 500 mg, is priced at $4.48.[32] There is a $4.48 price difference between the Class Rapid Release Gelcaps and the non-rapid release product in this count.

52.   A regularly priced 24 count package of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500 mg, is priced at $1.96,[33] while a

---

[30] https://www.walmart.com/search/?cat_id=0&facet=brand%3AEquate&query=rapid+release#searchProductResult (last accessed 11.15.2018).

[31] https://www.walmart.com/search/?query=equate%20acetaminophen&cat_id=0&typeahead=equate%20ace (last accessed 11.15.2018).

[32] https://www.walmart.com/search/?query=equate%20acetaminophen%20225 (last accessed 11.15.2018).

[33] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-Release-Gelcaps-500-mg-24-Ct/10403810 (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

regularly priced 24 count package of Equate™ Extra Strength Acetaminophen caplets, 500 mg, is priced at $1.48.[34] There is a 48¢ difference between the Class Rapid Release Gelcaps and the non-rapid release product in this count.

53.     Consumers have been willing to and continue to pay this premium because, as a result of false, misleading, unfair, and/or deceptive labeling and other advertising, they believe the Class Rapid Release Gelcaps work faster than other, cheaper acetaminophen products when in fact, they do not.

54.     As a generic brand, Walmart's Equate™ prices are still lower than their Tylenol® counterparts because Walmart did not have the expense of researching, developing, marketing, and promoting the drugs when they were new.

55.     Instead, Walmart introduces its counter parts to Tylenol® products after the public is familiar with the Tylenol® product.

56.     In the case of the Class Rapid Release Gelcaps, Walmart relied on Johnson & Johnson's massive marketing campaign and the success of its rapid release products before entering the market.

57.     Then Walmart produced the Class Rapid Release Gelcaps to look the same as or similar to the Tylenol® rapid release products.

58.     For the regular, non-PM, product, Walmart's gelcaps are approximately the same size and shape as the Tylenol® product and they utilize the same distinct color pattern – red on one end, blue on the other end, and a bit of white in the middle.

---

[34] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Caplets-500-mg-24-Ct/10324473 (last accessed 11.15.2018).

1
2
3
4
5
6
7
8
9
10
11
12

    

35                                    36

13
14    59.    The same is true for the PM product, Walmart's Equate™ gelcaps are
15  approximately the same size and shape as the Tylenol® product and they utilize the
16  same distinct color pattern – darker blue on one end, a lighter blue on the other end,
17  and a bit of white in the middle.

18
19
20
21
22
23
24

---

25  [35] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-Release-Gelcaps-500-mg-24-Ct/10403810 (last accessed 11.15.2018).
26  [36] https://adexchanger.com/advertiser/tylenol-feeling-good-mobile-strategy/ (last accessed 11.15.2018).
27
28

1
2
3
4
5
6
7
8
9

 

37 38

10      60.     Consumers were already accustomed to the look of the Tylenol® rapid

11  release products and familiar with the claims that they were fast-acting.

12      61.     Walmart did nothing to correct the thinking that "rapid release" gelcaps

13  worked faster than other, cheaper acetaminophen products.

14      62.     Instead, Walmart capitalized on that thinking and sought to further

15  consumer deceit with its own false, misleading, unfair, and/or deceptive labeling and

16  marketing.

17      63.     For example, on the packaging for the Class Rapid Release Gelcaps,

18  Walmart associates its products with the Tylenol® products.[39]

19      64.     Walmart also advertises its Class Rapid Release Gelcaps as "rapid

20  release" products.[40]

21

22

23  [37] https://www.walmart.com/ip/4-Pack-Equate-Extra-Strength-Acetaminophen-
    PM-Rapid-Release-Gelcaps-500-mg-20-Ct/625528959 (last accessed 11.15.2018).
24  [38] https://www.amazon.com/Tylenol-Reliever-Nighttime-Strength-80-
    count/dp/B000XYIJP6 (last accessed 11.15.2018).
25
26  [39] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-
    Release-Gelcaps-500-mg-100-Ct/10403811 (last accessed 11.15.2018).
27  [40] Id.

28

65.     Consumers try the Walmart Class Rapid Release Gelcaps because they are labeled "rapid release" and because they are cheaper than the Tylenol® rapid release products.

**THE SCIENCE BEHIND RAPID RELEASE PRODUCTS DEMONSTRATES THE LABELING AND MARKETING OF THE CLASS RAPID RELEASE GELCAPS ARE FALSE, MISLEADING, UNFAIR, AND/OR DECEPTIVE**

66.     Despite what Walmart represents to the public about the Class Rapid Release Gelcaps, they do not work faster than other, cheaper Equate™ acetaminophen products.

67.     A 2018 study of the "rapid release" or "fast release" claims of acetaminophen products, including Equate™ Acetaminophen Rapid Release Gelcaps, revealed that these products not only fail to work faster, they actually work *slower* than their traditional acetaminophen counterparts, such as tablets.[41]

68.     Thus, the science demonstrates that Walmart's representations and advertising are false, misleading, deceptive, and unfair on their face.

69.     The level of deception and unfairness is elevated given that Walmart has long known or should have known that there is scant or conflicting evidence about the correlation of the speed and efficacy of its acetaminophen products to its rapid release gelcap design.

70.     Walmart knew or should have known of the existence of "contradictory claims for rapid or fast-release [acetaminophen] products."[42]

71.     There is no proven significant efficacy difference between the Equate™ rapid release gelcaps and the Equate™ non-rapid release products to warrant Walmart's representations that the Class Rapid Release Gelcaps work faster than its non-rapid release products.

---

[41] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.
[42] *Id*.

72.     Walmart knew or should have known that its representations about the Class Rapid Release Gelcaps were false, misleading, unfair, and/or deceptive. Even though Walmart capitalizes and relies upon information put in the marketplace by Johnson & Johnson, it is still responsible for its representations pertaining to the Class Rapid Release Gelcaps and investigating the truth or falsity of the same before presenting it to the American people.

73.     Walmart should have had a basis for the representations it made on and in its labeling, packaging, advertising, and other marketing more than Johnson & Johnson did it.

74.      Despite that Walmart knew or should have known that the Class Rapid Release Gelcaps did not work faster than its other Equate™ products, Walmart falsely marketed the Class Rapid Release Gelcaps as rapid release, suggesting to consumers that the Class Rapid Release Gelcaps worked faster than its other, cheaper, non-rapid release Equate™ acetaminophen products.

75.     Walmart's conduct induced and continues to induce unwitting consumers to buy the Class Rapid Release Gelcaps for a premium price – a price that exceeds the actual value of the product.

## PLAINTIFF'S EXPERIENCE

**Plaintiff Toya Edwards**

76.     Plaintiff Toya Edwards began purchasing the Class Rapid Release Gelcaps, specifically Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps in 24 count, about 2 years ago on the advice of her doctor.

77.     The Class Rapid Release Gelcaps were recommended as treatment for her chronic migraines and tooth pain associated with her wisdom teeth surgery.

78.     Her doctor specifically recommended rapid release gelcaps because they would allegedly alleviate her pain faster.

CLASS ACTION COMPLAINT

79.    Over the last two years, Plaintiff Edwards has purchased the Class Rapid Release Gelcaps at Walmart in Paramount, Los Angeles County, California.

80.    Plaintiff Edwards purchased the Class Rapid Release Gelcaps at a price more than the brand's acetaminophen tablet product in the same count.

81.    She purchased the Class Rapid Release Gelcaps over other Walmart brands and other acetaminophen products in part because they were advertised and labeled as "rapid release" offering "rapid relief."

82.    Walmart's marketing (labeling and advertising) misled Plaintiff Edwards to believe that the Class Rapid Release Gelcaps she purchased would provide faster relief than other cheaper Walmart acetaminophen products.

83.    Had Plaintiff Edwards known that the Class Rapid Release Gelcaps did not act any faster than traditional, cheaper Walmart acetaminophen products, she would not have been willing to pay the premium that she did for the Class Rapid Release Gelcaps. Instead, she would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

84.    The cost of the Class Rapid Release Gelcaps exceeded the value of the product and Plaintiff Edwards did not receive the benefit of the bargain.

## CLASS ACTION ALLEGATIONS

85.    Walmart's conduct violates the law. Walmart violated consumer protection laws, breached warranties, and unjustly enriched itself to the detriment of consumers. Walmart's conduct is ongoing and is the basis for Plaintiff's class action allegations.

86.    Plaintiff represents a proposed class of hundreds of thousands of consumers who purchased and used the Class Rapid Release Gelcaps manufactured and distributed by Walmart and sold under the Equate™ brand name.

87.    Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), against Walmart, on their own and

on behalf of the California Class defined below. Plaintiff proposes the California Class in the interest of judicial economy and efficiency.

### **California Class:**
During the fullest period allowed by law, all persons who purchased the Class Rapid Release Gelcaps in the State of California.

88.   At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiff reserves the right to modify these class definitions.

89.   "Class Rapid Release Gelcaps" include Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, and any other Equate™ or Walmart brand acetaminophen product labeled and/or marketed as "rapid release."

90.   Excluded from the proposed Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Walmart and any entity in which it has a controlling interest or which has a controlling interest in it; (c) the officers and directors of Walmart; (e) Walmart's legal representatives, assigns, and successors; and (f) all persons who properly execute and file a timely request for exclusion from the Class.

91.   Plaintiff meet the prerequisites of Rule 23(a) to bring this action on behalf of the California Class.

92.   **Numerosity**: While the exact number of class members cannot yet be determined, the Class consists at a minimum of hundreds of people dispersed throughout the State of California, such that joinder of all members (the "Class

Members") is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Walmart.

93.   **Commonality**:  Common questions of law and fact exist as to all members of the Class. Among the questions of law and fact common to the Class are:

a.   Whether Walmart knew, or reasonably should have known, that the Class Rapid Release Gelcaps it placed into the stream of commerce would not function as advertised;

b.   Whether the advertised "rapid release" feature of the Class Rapid Release Gelcaps is a material fact that reasonable purchasers would have considered in deciding whether to purchase the Class Rapid Release Gelcaps;

c.   Whether the Class Rapid Release Gelcaps are of the quality and character Walmart promised to consumers;

d.   Whether Walmart breached implied warranties relating to the Class Rapid Release Gelcaps;

e.   Whether Walmart mispresented the characteristics, qualities, and capabilities of the Class Rapid Release Gelcaps;

f.   Whether Walmart made fraudulent, false, deceptive, misleading and/or otherwise unfair statements in connection with the sale of the Class Rapid Release Gelcaps on its labeling, in its advertising, and on its website;

g.   Whether Walmart engaged in unfair and deceptive trade practices pertaining to the Class Rapid Release Gelcaps;

h.   Whether Walmart was unjustly enriched as a result of selling the Class Rapid Release Gelcaps;

i.   Whether Walmart should be ordered to disgorge all or part of the profits it received from the sale of the Class Rapid Release Gelcaps;

CLASS ACTION COMPLAINT

j.    Whether Plaintiff and Class Members are entitled to damages including compensatory, exemplary, and statutory damages, and the amount of such damages;

k.    Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction and requiring that Walmart engage in a corrective notice campaign and/or a recall of the Class Rapid Release Gelcaps to address misrepresentations and misleading statements on the packaging; and

l.    Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees and pre-judgment interest, post-judgment interest, and costs.

94.   **Typicality**:  Plaintiff has substantially the same interest in this matter as all other proposed Class Members and their claims arise out of the same set of facts and conduct as all other Class Members. Plaintiff and all Class Members purchased the Class Rapid Release Gelcaps. All of the claims of Plaintiff and Class Members arise out of Walmart's false, misleading, deceptive, and unfair conduct. Common to Plaintiff's and Class Members' claims is Walmart's conduct in marketing, advertising, warranting, and/or selling the Class Rapid Release Gelcaps and Plaintiff and Class Members' purchase of the Class Rapid Release Gelcaps.

95.   **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of Class Members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiff has no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

96.   The elements of Rule 23(b)(2) are met. Walmart will continue to commit the violations alleged, and Plaintiff, Class Members and the general public will be subject to and continue to suffer from the same or substantially similar

CLASS ACTION COMPLAINT

deceitful marketing. Walmart has acted on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

97.    The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only the individual Class Members and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Walmart, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiff. Plaintiff's counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

98.    Any applicable statutes of limitations have been tolled by Walmart's knowledge, actual misrepresentations, and/or denial of the facts as alleged herein.

99.    Alternatively, the facts alleged herein give rise to estoppel. Walmart was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Rapid Release Gelcaps. At all relevant times and continuing to this day, Walmart misrepresented the true character, quality, and nature of the Class Rapid Release Gelcaps. Representations which it knew or should have known were false, misleading, unfair, and/or deceptive. Plaintiff and Class Members reasonably relied on Walmart's

CLASS ACTION COMPLAINT

misrepresentations of material facts. Based on the allegations contained herein, Walmart is estopped from prevailing on any statute of limitations defense in this action.

100.   Additionally, Walmart is estopped from raising any defense of laches due to its own unclean hands.

**CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW ("FAL")
BUSINESS AND PROFESSIONAL CODE § 17500**

**(Plaintiff Individually and on Behalf of the California Class)**

101.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

102.   California Business & Professions Code § 17500 states:

> "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

103.   California's FAL prohibits not only false advertising, but also advertising which is misleading, even if true, and advertising that has a capacity, likelihood, or tendency to deceive of confuse the public.

104.   Walmart caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of

reasonable care should have been known to Walmart, to be untrue and misleading to consumers, including Plaintiff and the other Class Members.

105.   Walmart has violated § 17500 because the misrepresentations and omissions regarding the speed and capability of its Class Rapid Release Gelcaps as set forth in this Complaint were material and likely to deceive a reasonable consumer.

106.   Plaintiff and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Walmart's false, unlawful, misleading, unfair, and/or deceptive practices. In purchasing their Class Rapid Release Gelcaps, Plaintiff and the other Class Members relied on the misrepresentations and/or omissions of Walmart with respect to the speed and capability of the Class Rapid Release Gelcaps. Walmart's representations were untrue because the Class Rapid Release Gelcaps were manufactured and sold with the same acetaminophen medicine used in its other Walmart products and the Class Rapid Release Gelcaps worked slower, rather than faster, than the other non-rapid release acetaminophen Walmart products. Had Plaintiff and the other Class Members known this, they would not have purchased their Class Rapid Release Gelcaps and/or paid as much for them. Accordingly, Plaintiff and Class Members overpaid for their Class Rapid Release Gelcaps and did not receive the benefit of their bargain.

107.   All of Walmart's wrongful conduct alleged herein occurred in the course of Walmart's business.

108.   Plaintiff, individually and on behalf of the other Class Members, requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and Class Members any money Walmart acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief the Court deems necessary.

**COUNT II**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
BUSINESS AND PROFESSIONAL CODE § 17200**

**(Plaintiff individually and on behalf of California Class)**

109.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

110.   The California UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

111.   Walmart has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that the Class Rapid Release Gelcaps work slower than its other non-rapid release acetaminophen Walmart products. Walmart should have disclosed this information or at least not misrepresented the Class Rapid Release Gelcaps as rapid release suggesting that they worked faster than its other products because that was untrue and Walmart was in a superior position to know the true facts, and Plaintiff and Class Members could not reasonably be expected to learn or discover that true fact.

112.   These acts and practices have deceived Plaintiff and are likely to deceive the public. By misrepresenting the true quality and nature of the Class Rapid Release Gelcaps to Plaintiff and the Class Members, Walmart violated the UCL, and caused injuries to Plaintiff and Class Members. The misrepresentations and omissions by Walmart pertained to information that was material to Plaintiff and Class Members' purchase decisions, as it would be material to all reasonable consumers.

113.   The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition. The injuries that Plaintiff and the Class Members suffered should have reasonably been avoided.

114.   Walmart's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313.

115.   Plaintiff and Class Members seeks to enjoin further unlawful, misleading, deceptive, unfair, and/or fraudulent acts or practices by Walmart, obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and obtain all other relief allowed under California Business & Professions Code § 17200.

## COUNT III
## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")
## CALIFORNIA CIVIL CODE § 1761
### (Plaintiff individually and on behalf of the California Class)

116.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

117.   Plaintiff and Class Members are "consumers" within the meaning of California Civil Code § 1761(d). Plaintiff and Class Members purchased one or more Class Rapid Release Gelcaps.

118.   Walmart is a "person" within the meaning of California Civil Code § 1761(c).

119.   In the course of Walmart's business, Walmart engaged in unfair and deceptive acts in violation of the CLRA by the practices described above. These acts and practices violate, at a minimum, the following sections of the CLRA:

CLASS ACTION COMPLAINT

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

120.   Walmart's unfair or deceptive acts or practices occurred repeatedly in Walmart's trade or business and were capable of deceiving a substantial portion of the purchasing public.

121.   Walmart knew or should have known that the Class Rapid Release Gelcaps were not more effective or faster-acting than its other, cheaper non-acetaminophen Walmart products.

122.   Walmart was under a duty to Plaintiff and the Class Members to disclose the true nature and quality of the Class Rapid Release Gelcaps because:

a.   Walmart was in a superior position to know the true state of facts about the Class Rapid Release Gelcaps;

b.   Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Rapid Release Gelcaps did not conform to Walmart's representations;

c.   Walmart knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the true quality and nature of the Class Rapid Release Gelcaps; and

d.   Walmart failed to disclose the truth about the Class Rapid Release Gelcaps to Plaintiff and Class Members.

123.   In misrepresenting the speed and capability of the Class Rapid Release Gelcaps as well as failing to disclose the true quality and nature of the Class Rapid Release Gelcaps, Walmart has misrepresented and/or concealed material facts and breached its duty not to do so.

124.   The facts misrepresented and/or not disclosed by Walmart to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Rapid Release Gelcaps or pay a lesser price for the Class Rapid Release Gelcaps. Had Plaintiff and Class Members known this information, they would not have purchased the Class Rapid Release Gelcaps or would have paid less for them.

125.   Plaintiff will provide Walmart with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and currently seeks injunctive relief. After the 30-day notice period expires, Plaintiff will amend this complaint to seek monetary damages under the CLRA.

126.   Plaintiff and Class Members' injuries were proximately caused by Walmart's unfair and deceptive business practices.

127.   Therefore, Plaintiff and Class Members are entitled to equitable relief under the CLRA.

## COUNT IV
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT CAL. CIV. CODE § 1790 *et seq.*
### (Plaintiff individually and on behalf of the California Class)

128.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

129.   The Class Rapid Release Gelcaps are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

CLASS ACTION COMPLAINT

130.   Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

131.   Walmart is a "manufacturer," "distributor," or "retail seller" within the meaning of Cal. Civ. Code § 1791.

132.   The implied warranty of merchantability included with the sale of each Class Rapid Release Gelcap means that Walmart warranted that each Class Rapid Release Gelcap:

(a)   would pass without objection in trade under the description;

(b)   was fit for the ordinary purposes for which the Class Rapid Release Gelcaps would be used; and

(c)   conformed to the promises or affirmations of fact made about the Class Rapid Release Gelcaps.

133.   At a minimum, the Class Rapid Release Gelcaps do not conform to the promises or affirmations of fact made on the label or in the advertising and marketing of the product, in that the Class Rapid Release Gelcaps do not rapid release or provide rapid relief faster than cheaper, non-rapid release acetaminophen Walmart products.

134.   The Class Rapid Release Gelcaps are not adequately labeled.

135.   The labeling, packaging, advertising, and marketing pertaining to the Class Rapid Release Gelcaps is false, misleading, and/or deceptive.

136.   These misrepresentations by Walmart have deprived Plaintiff and Class Members of the benefit of their bargains.

137.   The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

138.   As a direct and proximate result of Walmart's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

CLASS ACTION COMPLAINT

139.   At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

140.   Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

141.   Plaintiff are also entitled to all incidental and consequential damages resulting from Walmart's conduct, as well as reasonable attorneys' fees and costs.

<u>**COUNT V**</u>

<u>**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER UCC §2-314**</u>

**(Plaintiff individually and on behalf of the California Class)**

142.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

143.   The implied warranty of merchantability included with the sale of each Class Rapid Release Gelcap means that Walmart warranted that each Class Rapid Release Gelcap, *inter alia*:

    (a)   would pass without objection in trade under the description;

    (b)   was fit for the ordinary purposes for which the Class Rapid Release Gelcaps would be used;

    (c)   was adequately contained, packaged, and labeled; and

    (d)   conformed to the promises or affirmations of fact made about the Class Rapid Release Gelcaps.

144.   At a minimum, the Class Rapid Release Gelcaps do not conform to the promises or affirmations of fact made on the label or in the advertising and marketing of the product, in that the Class Rapid Release Gelcaps do not provide rapid release or provide rapid relief faster than cheaper, non-rapid release acetaminophen Walmart Equate™ products.

145.   The Class Rapid Release Gelcaps are not adequately labeled.

146.   The labeling, packaging, advertising, and marketing pertaining to the Class Rapid Release Gelcaps is false, misleading, and/or deceptive.

147.   These misrepresentations by Walmart have deprived Plaintiff and Class Members of the benefit of their bargains.

148.   The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

149.   As a direct and proximate result of Walmart's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

150.   At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

151.   Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

152.   Plaintiff is also entitled to all incidental and consequential damages resulting from Walmart's conduct, as well as reasonable attorneys' fees and costs.

## COUNT VI
## BREACH OF EXPRESS WARRANTY UNDER UCC §2-313
### (Plaintiff individually and on behalf of the California Class)

153.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

154.   As described herein, Walmart made statements, promises, affirmations about the Class Rapid Release Gelcaps as to the nature, quality, and capability of the goods that became part of the bargain between the parties to create an express warranty that the Class Rapid Release Gelcaps would in fact conform to those representations.

155.   Walmart breached its express warranty when its Class Rapid Release Gelcaps did not conform to the representations and descriptions Walmart made to consumers.

156.   Plaintiff and Class Members reasonably relied on Walmart's misrepresentations.

157.   The misrepresentations by Walmart have deprived Plaintiff and Class Members of the benefit of their bargains.

158.   The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

159.   As a direct and proximate result of Walmart's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

160.   At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

161.   Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

162.   Plaintiff and Class Members are also entitled to all incidental and consequential damages resulting from Walmart's conduct, as well as reasonable attorneys' fees and costs.

163.   Plaintiff and Class Members have provided or will provide Walmart notice of the alleged breach within a reasonable time after discovering the breach.

CLASS ACTION COMPLAINT

## COUNT VII

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA") 15 U.S.C. § 2301 *et seq.*

### (Plaintiff individually and on behalf of the California Class)

164.  Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

165.  Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

166.  Walmart is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301 (4)-(5).

167.  Class Rapid Release Gelcaps are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

168.  As detailed above, Walmart breached its warranty obligations by, at least, failing to provide a product that conformed to the promises and affirmations Walmart made about the Class Rapid Release Gelcaps.

169.  Walmart's breach of warranty deprived Plaintiff and Class Members of the benefit of their bargain.

170.  The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

171.  Walmart has been afforded reasonable opportunity to cure its breaches of warranty. Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have will send notice to Walmart's principal place of business to provide it with reasonable opportunity to correct its business practice and cure its breaches of warranties under the MMWA.

CLASS ACTION COMPLAINT

172.   In addition, resorting to any sort of informal dispute settlement procedure or affording Walmart another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Walmart has repeatedly mispresented the true quality and nature of the Class Rapid Release Gelcaps and has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford Walmart a reasonable opportunity to cure its breach of warranty is excused and/or has been satisfied.

173.   As a direct and proximate result of Walmart's warranty breach, Plaintiff and Class Members sustained damages and other losses to be determined at trial. Walmart's conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT VIII
## UNJUST ENRICHMENT
### (Plaintiff individually and on behalf of the California Class)

174.   Plaintiff re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

175.   As described above, Walmart sold the Class Rapid Release Gelcaps to Plaintiff and Class Members making false, misleading, and/or deceptive representations about the products' speed and capabilities as compared to Walmart's cheaper, non-rapid release acetaminophen products.

176.   Walmart unjustly charged and continues to charge Plaintiff and Class Members a premium to purchase the Class Rapid Release Gelcaps over the non-rapid release acetaminophen Walmart products.

CLASS ACTION COMPLAINT

177.   As a result of its false, misleading, unfair, and/or deceptive practices and omission about the true nature and quality about the Class Rapid Release Gelcaps, Walmart obtained monies that rightfully belong to Plaintiff and Class Members.

178.   Walmart appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without knowledge of the true quality and nature of the Class Rapid Release Gelcaps, paid a higher price for their than what they were worth.

179.   Walmart also received monies for those Class Rapid Release Gelcaps that Plaintiff and Class Members would not have otherwise purchased had they known the true nature and quality of the products.

180.   Walmart's retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

181.   Plaintiff and Class Members seek restitution from Walmart and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Walmart from its wrongful conduct and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## COUNT IX
## DECLARATORY RELIEF
**(Plaintiff individually and on behalf of the California Class)**

182.   Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

183.   There is a controversy between Walmart and Plaintiff and the other Class Members concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps and the false, misleading, unfair, and/or deceptive representations that Walmart made about the same.

CLASS ACTION COMPLAINT

184.   Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

185.   Accordingly, Plaintiff and Class Members seek a declaration that the Class Rapid Release Gelcaps do not release, provide relief, or otherwise work faster than other, cheaper non-rapid release acetaminophen Walmart products.

186.   Additionally, Plaintiff and Class Members seek a declaration that as a result of Walmart's false, misleading, unfair, and/or deceptive representations, consumers and Class Members did not and do not receive the benefit of their bargain.

187.   Walmart, on information and belief, designed, manufactured, produced, tested, inspected, marketed, advertised, labeled, packaged, distributed, and sold the Class Rapid Release Gelcaps. Walmart continues to do so while using false, misleading, unfair, and/or deceptive representations to ensure sales to consumers.

188.   Based upon information and belief, Walmart has taken no corrective action concerning the false, misleading, unfair, and/or deceptive representations described herein, and has not issued any recalls, warnings, or notices concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps.

189.   Plaintiff and Class Members have suffered damages or injuries due to Walmart's conduct described herein.

190.   Walmart should be required to take corrective action to prevent further injuries, including:  (a) issuing a nationwide recall of the Class Rapid Release Gelcaps to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps; and (c) immediately discontinuing

CLASS ACTION COMPLAINT

any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to enter judgment awarding the following relief:

A.   An order certifying the proposed California Class;

B.   An order awarding Plaintiff and Class Members their actual damages, punitive damages, and/or any other monetary relief provided by law;

C.   An order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.   An order requiring Walmart to adequately represent the true nature, quality, and capability of the Class Rapid Release Gelcaps;

E.   An order (a) issuing a nationwide recall of the Class Rapid Release Gelcaps to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps; and (c) immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

F.   An order granting declaratory and/or injunctive relief as allowable under state and federal law;

G.   An order awarding Plaintiff and Class Members pre-judgment and post-judgment interest as allowed by law;

H.   An order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

I.   An order awarding such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demand a trial by jury on all issues so triable under the law.

DATED:  November 15, 2018    Respectfully submitted,

*/s/ Crystal Foley* __
Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
Facsimile:  (310) 322-3655
cfoley@simmonsfirm.com

Mitchell M. Breit (*pro hac vice forthcoming*)
**SIMMONS HANLY CONROY**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
mbreit@simmonsfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2018, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/ Crystal Foley

CLASS ACTION COMPLAINT