Jaikaran Singh, CA Bar No. 201355
    jsingh@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA  90071-2411
Telephone:  858.847.6700
Facsimile:   858.792.6773

Jay N. Varon, Esq. (*pro hac vice motion forthcoming*)
    jvaron@foley.com
David A. Hickerson, Esq. (*pro hac vice motion forthcoming*)
    dhickerson@foley.com
**FOLEY & LARDNER LLP**
3000 K Street, N.W.
Washington, D.C.  20007
Telephone:  202.672.5380
Facsimile:   202.672.5399

Attorneys for Defendant
Walmart, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYA EDWARDS and JAMAL ERAKAT on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALMART, INC., <br><br> Defendant. | Case No. 2:18-cv-9655 GW-FFM <br><br> **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Date:  March 7, 2019 <br> Time:  8:30 a.m. <br> Ctrm:  9D <br> Judge:  Hon. George H. Wu <br><br> Trial Date:  Not Set <br> Complaint Filed:  November 15, 2018 <br> FAC Filed:  January 11, 2019 |

Case No. 2:18-cv-9655-GW-FFM

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................1

II.   STATEMENT OF FACTUAL ALLEGATIONS. ....................................2

III.  LEGAL STANDARD OF REVIEW....................................................3

IV.  ARGUMENT........................................................................................5

    A.   Plaintiffs' Claims Are Expressly Preempted by Federal Law. ......................5

        1.   The National Uniformity for Nonprescription Drugs Statute Expressly Preempts State Law Claims. ................................................5

        2.   An Extensive Federal Regulatory Scheme Governs OTC Drugs. ........................................................................7

        3.   Plaintiffs' Claims Are Expressly Preempted by Section 379r..........13

    B.   If Plaintiffs' Claims Are Not Preempted, They Should Be Dismissed Under the Doctrine of Primary Jurisdiction. ..................15

    C.   Plaintiffs Fail to State a Claim Under California Consumer Protection Statutes. ................................................................16

        1.   Plaintiffs Fail to Plausibly Allege that the Use of the Term "Rapid Release" on the Equate Gelcap Products Is False, Deceptive, or Misleading ................................................16

        2.   Plaintiffs Have Failed to Allege a Duty to Disclose to Support a Concealment Claim ................................................20

        3.   Plaintiff Edwards Lacks Standing to Assert FAL, UCL and CLRA Claims................................................21

    D.   California's Safe Harbor Doctrine Bars Plaintiffs' FAL, UCL and CLRA Claims ................................................21

    E.   Plaintiffs Fail to State a Claim for Breach of Implied and Express Warranty. ................................................22

    F.   Plaintiffs' Remaining Claims Must Also Be Dismissed............................25

V.   CONCLUSION................................................................26

4825-9775-4502.8

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................3, 17

*Bowling v. Johnson & Johnson*,
 65 F. Supp. 3d 371 (S.D.N.Y. 2014) ............................................7, 8, 24, 25

*Carter v. Novartis Consumer Health, Inc.*,
 582 F. Supp. 2d 1271 (C.D. Cal. 2008) ........................................6, 7, 15, 6

*Cipollone v. Liggett Group, Inc.*,
 505 U.S. 504 (1992)....................................................................................5

*Clark v. Time Warner Cable*,
 523 F.3d 1110 (9th Cir. 2008) ...................................................................15

*Clemens v. DaimlerChrysler Corp.*,
 534 F.3d 1017 (9th Cir. 2008) ...................................................................24

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
 911 F.2d 242 (9th Cir. 1990) ...............................................................19, 20

*Crosby v. Nat'l Foreign Trade Council*,
 530 U.S. 363 (2000)....................................................................................5

*Dabish v. MusclePharm Corp.*,
 No. 3:15-CV-02848-CAB-RBB, 2016 U.S. Dist. LEXIS 191885
 (S.D. Cal. Sept. 26, 2016)..............................................................4, 17, 18, 19

*Davis v. HSBC Bank Nevada, N.A.*,
 691 F.3d 1152 (9th Cir. 2012) ................................................................4, 22

*Degelmann v. Advanced Medical Optics, Inc.*,
 659 F.3d 835 (9th Cir. 2011) .................................................................10, 11

*Ebner v. Fresh Inc.*
 2013 U.S. Dist. LEXIS 188889, at *4-6 (C.D. Cal. Sept. 11, 2013).........................22

*Elias v. Hewlett-Packard Co.*,
 903 F. Supp. 2d 843 (N.D. Cal. Oct. 11, 2012)......................................23

# TABLE OF AUTHORITIES (CONTINUED)

Page(s)

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
No. MDL 08-1934 PSG, 2009 U.S. Dist. LEXIS 58697 (C.D. Cal. 2009).................12

*Gisvold v. Merck & Co., Inc.*,
62 F. Supp. 3d 1198 (S.D. Cal. 2014).........................................................6, 16

*Gustavson v. Wrigley Sales Co.*,
No. 12-CV-01861-LHK, 2014 WL 60197 (N.D. Cal. Jan. 7, 2014)............................4

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
No. 08-CV-1166-IEG (POR), 2009 WL 6597891 (S.D. Cal. Dec 23,
2009) .......................................................................................................4, 5

*I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*,
502 U.S. 183 (1991)..........................................................................................6

*In re iPhone 4S Consumer Litig.*,
637 F. App'x 414 (9th Cir. 2016) .....................................................................17

*Iezza v. Saxon Mortg. Servs*,
Case No. 10-03634 DDP JCGx, 2010 U.S. Dist. LEXIS 108883
(C.D. Cal. Sep. 28, 2010)...............................................................................25

*Kanfer v. Pharmacare US, Inc.*,
142 F. Supp. 3d 1091 (S.D. Cal. 2015)..............................................................4

*King v. Nat'l Gen. Ins. Co.*,
129 F. Supp. 3d 925 (N.D. Cal. Sep. 15, 2015)...................................................25

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) .........................................................................19

*Mills v. Warner-Lambert*,
581 F. Supp. 2d 772 (E.D.T.X, 2015)................................................................9

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .............................................................................4

*Perez v. Kroger*,
No. 2:17-cv-02448-ODW (AGR), 2017 WL 3601998
(C.D. Cal. Aug.18, 2017)...................................................................................4

4825-9775-4502.8

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Page(s)**

*Route v. Mead Johnson Nutrition Co.*,
   No. CV 12-7350-GW, 2013 U.S. Dist. LEXIS 35069
   (C.D. Cal. Feb. 21, 2013)......................................................................19, 24

*Sandoval v. PharmaCare US, Inc.*,
   145 F. Supp. 3d 986 (S.D. Cal. 2015)................................................................4

*Smith-Victor Corp. v. Sylvania Electric Products, Inc.*,
   242 F. Supp. 302 (N.D. Ill. 1965)..............................................................19, 20

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
   142 F. Supp. 3d 747 (N.D. Ill. 2015)..........................................................10, 11

*United States v. 14.02 Acres of Land*,
   547 F.3d 943 (9th Cir. 2008) ............................................................................5

*United States ex rel. Modglin v. DJO Global Inc.*,
   48 F. Supp. 3d 1362 (C.D. Cal. 2014) ..........................................................11

*Weinberger v. Bentex Pharmas. Inc.*,
   412 U.S. 645 (1973).........................................................................................8

**State Cases**

*Berryman v. Merit Property Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007) .....................................................................20

*Bower v. AT&T Mobility, LLC*,
   196 Cal. App. 4th 1545 (2011) .....................................................................21

*Buller v. Sutter Health*,
   160 Cal. App. 4th 981 (2008) .......................................................................20

*Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999) ..................................................................................22

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) .......................................................................24

*Eckler v. Neutrogena Corp.*,
   238 Cal. App. 4th 433 (2015) .........................................................................9

4825-9775-4502.8

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ...................................................................21

*Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than
   Acetaminophen Tablets*,
   Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) ..............................2

*Warner Constr. Corp. v. City of Los Angeles*,
   2 Cal. 3d 285 (1990) .......................................................................21

**Federal Statutes/Rules**

21 C.F.R.
   § 201.66.............................................................................................7
   § 210.66(a) ........................................................................................7
   § 299.5(a) ........................................................................................12
   § 299.5(b) ........................................................................................12
   § 330.............................................................................................1, 7
   § 330.1 ..............................................................................................8
   § 330.10(a)(7) ...................................................................................9
   § 330.10(a)(7)(iii) .............................................................................9
   § 330.10(a)(8) ...................................................................................9
   § 330.10(a)(9) ...................................................................................9
   § 330.10(b) ........................................................................................8
   § 330.14(h) ........................................................................................9
   § 343.................................................................................................8
   § 343.10 ............................................................................................9
   § 343.50 ............................................................................................9
   § 343.60 ............................................................................................9
   § 343.80 ............................................................................................9
   § 343.90 ............................................................................................9
   § 343.90(c) ..................................................................................12, 13

15 U.S.C
   § 2301(6)......................................................................................1, 24

Case No. 2:18-cv-9655-GW-FFM

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

21 U.S.C.
 § 352(a) ...............................................................................7, 13
 § 353(b)(1) .................................................................................6
 § 353(f) .......................................................................................6
 § 360k(a) ....................................................................................7
 § 379r ................................................................................*passim*
 § 379r(a) .....................................................................................5
 § 501(b) ....................................................................................12
 § 502(a) ...............................................................................7, 13
 § 502(e)(3)(b) ..........................................................................12

**State Statutes/Rules**

Cal. Civ. Code
 § 1791.1(a) ...............................................................................23
 § 1791.1(c) ...............................................................................23

U.C.C
 § 2-314(2) .................................................................................23

Case No. 2:18-cv-9655-GW-FFM

## I.  INTRODUCTION

When a product label contains true statements that comply with federally mandated standards which govern the claims at issue, courts consistently hold the label is not false, misleading, or deceptive.  Plaintiffs Toya Edwards and Jamal Erakat ("Plaintiffs") filed this proposed class action on behalf of themselves and a putative class consisting of others in California who purchased Equate brand Over-the-Counter ("OTC") extra strength acetaminophen gelcaps (the "Equate Gelcap Products").  The crux of Plaintiffs' complaint is that consumers, like them, who purchased the Equate Gelcap Products were tricked into believing that they were getting the "quickest" and "fastest" dissolving acetaminophen product available because of the use of the words "Rapid Release" on the Equate Gelcap Products package labeling.

Plaintiffs' claims, however, are subject to dismissal because they are expressly preempted by federal statute – the National Uniformity for Nonprescription Drugs provision of the Food and Drug Administration ("FDA") Modernization Act of 1996, 21 U.S.C. § 379r.  Section 379r prohibits any state requirement that "relates to the regulation of" OTC drugs that "is in addition to, or not identical with" federal regulations governing OTC drugs.  There exists an extensive federal regulatory scheme, enacted by FDA, governing every aspect of OTC medication, including regulations regarding the labeling and branding of OTC drugs.  *See* 21 C.F.R. Part 330.  The regulatory scheme sets forth dissolution standards for acetaminophen products that establish that the Equate Gelcap Products more than meet the FDA's requirements for what dissolution rate constitutes a rapidly dissolving acetaminophen gelcap or tablet such that they can lawfully be labeled as "rapid release."  Plaintiffs' claims, however, would require an OTC drug to be the *fastest* release requirement to use this term, thereby adding additional and/or different requirements to the labeling of OTC drugs than those required by federal law.  Accordingly, Plaintiffs' claims are expressly preempted by Section 379r. [1]

---

[1] If the Court finds that Plaintiffs' claims are not preempted, the amended complaint should be dismissed under the doctrine of primary jurisdiction.  *See* text *infra* at IV.B.

-1-                                                     Case No. 2:18-cv-9655-GW-FFM

Second, Plaintiffs' claims under the UCL, FAL, and CLRA have several glaring deficiencies that subject them to dismissal under both Rules 12(b)(6) and 9(b). For example, Plaintiffs' allegations that the Equate Gelcap Products falsely represent that they work faster than Walmart's non-rapid release products are contradicted by the challenged Equate Gelcap Products labels themselves, which contain no comparative claims or make any affirmative representations that Equate Gelcap Products work faster than any other product. Likewise, Plaintiffs' allegations that the use of the term "Rapid Release" on the Equate Gelcap Products packaging is false and deceptive is directly undercut by the Study cited by Plaintiffs as the basis for their claims, which shows that the Equate Gelcap Products easily meet the FDA's standards and guidance for rapidly dissolving acetaminophen gelcaps.[2]

The deficiencies in Plaintiffs' FAC are significant and cannot be cured through creative pleading. Accordingly, for all these reasons and others detailed below, Walmart's motion to dismiss should be granted in its entirety with prejudice.

## II.    STATEMENT OF FACTUAL ALLEGATIONS.

Plaintiffs allege that Walmart sells extra strength acetaminophen gelcap products that use the words "Rapid Release" on the package labels. (Dkt. 20 (FAC), ¶¶ 7-8.) Plaintiffs allege in conclusory fashion that Walmart falsely represents that the Equate Gelcap Products work faster than its non-rapid release products. (*Id.* at ¶¶ 17, 54, 72, 75.) However, the package labels, which are shown in the FAC, do not make any comparative claims or other affirmative representations that Equate Gelcap Products work faster than any other acetaminophen products. (*Id.*at ¶¶ 7-8, 59-60.)

Plaintiffs' claims against Walmart are premised on a November 12, 2018 study entitled "Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than

[2] A gelcap is a capsule-shaped tablet that is encased or coated in gelatin or a similar substance. *See* Kucera, Jessop, Alvarez, Gortler, Light, *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets (last accessed Feb. 4, 2019) ("In the case of acetaminophen, coated capsule-shaped tablets, or caplets, are commonly marketed as gelcaps.").

-2-                                                           Case No. 2:18-cv-9655-GW-FFM

4825-9775-4502.8

Acetaminophen Tablets," which is cited in the FAC (the "Study").  (*Id.* at ¶ 13, n. 5.)  The Study found that the Equate Gelcap Products achieve an 80% dissolution rate in an average of 8.43 minutes.  (*See* Study, RJN, Ex. F.)  The Study "follow[ed] the USP monograph for acetaminophen dissolution…which specifies tolerance as greater or equal to 80% dissolution within 30 minutes." (*Id.*)  The Study concluded that the Equate Gelcap Products "passed industry standards for full dissolution in under 30 minutes." (*Id.*) Finally, the Study explains that products which dissolve in under 30 minutes, such as the Equate Gelcap Products, are "generally considered rapidly dissolving." (*Id.*)  As documented by the Study, the Walmart Acetaminophen gelcaps easily meet FDA's requirements for the "Rapid Release" label.

Plaintiffs also attempt to bootstrap a claim for false advertising against Walmart based on advertisements and claims made by Johnson & Johnson ("J&J") about its Rapid-Release Tylenol products, rather than statements made by Walmart.  (*Id.* at ¶¶ 29-45.) However, J&J is not a party to this litigation, and those statements do not relate to the Equate Gelcap Products at issue.  Plaintiffs' efforts to hold Walmart responsible for J&J's statements simply because the Equate Gelcap Products claim to have the same active ingredient—acetaminophen— and when there are no allegations that Plaintiffs even saw the alleged J&J promotional statements, much less relied on them, illustrates the insufficiency of Plaintiffs' claims against Walmart.[3]

## III.   LEGAL STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In reviewing the FAC, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

---

[3] *Compare id.* at ¶ 10 (alleging that the Equate Gelcap Products "are marketed as comparable to Tylenol Extra Strength Rapid Release Gels") *and id.* at ¶ 64 (alleging that the Equate Gelcap Products' packaging "associates its products with the Tylenol products") *with id.* ¶¶ 59-60 (showing that the packaging only states that the active ingredients of certain products are comparable).

"[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

"Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging." *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 992 (S.D. Cal. 2015). "The Court is not required to accept as true allegations of misrepresentations on the product labels that are contradicted by the labels themselves." *Dabish v. MusclePharm Corp.*, No. 3:15-CV-02848-CAB-RBB, 2016 U.S. Dist. LEXIS 191885, at *22-23 (S.D. Cal. Sept. 26, 2016). In addition, "courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading. A court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal citation and marks omitted).

Moreover, for the purposes of a motion to dismiss, courts have judicially noticed FDA guidance documents when they are available on government agency websites. *See Perez v. Kroger,* No. 2:17-cv-02448-ODW (AGR), 2017 WL 3601998, at *2 (C.D. Cal. Aug.18, 2017) (noticing FDA inspection guide and "Nutritional Labeling and Education Act," both of which were available online as a matter of public record); *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197 (N.D. Cal. Jan. 7, 2014); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG (POR), 2009 WL 6597891, at *2 (S.D. Cal. Dec 23, 2009).[4]

---

4 The FDA Guidance documents governing the Equate Gelcap Products at issue—discussed more fully below—are readily accessible on the FDA website and therefore may be judicially noticed. (RJN, Exs. A-C.) Similarly, the FDA enforcement letters cited herein are official government documents that are readily accessible on the FDA website, and the Court should take judicial notice of these documents, too. (RJN, Exs. D-E.) *See Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1099 (S.D. Cal. 2015) (finding FDA Warning letters available on the FDA's website appropriate for judicial notice); *see also United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and 'reports of administrative bodies.'").

In this case, the FAC plainly refers to and relies upon the Study and the Equate Gelcap Products label. (*See* FAC at ¶¶ 13, 27-28, 46, 59-60, 68, and 71.) These documents are not only central to Plaintiffs' claims, but they form the *entire basis* for Plaintiffs' case. Accordingly, as part of this Motion, Walmart requests that the Court take judicial notice of the Study, the Equate Gelcap Product labels, and the FDA Guidance documents and warning letters cited herein. (*See* RJN, Exs. A-H.)

## IV.   ARGUMENT

### A.   Plaintiffs' Claims Are Expressly Preempted by Federal Law.

"Article VI of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; …any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). State law is preempted if federal law "express[ly]" preempts it. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Here, Plaintiffs' claims are expressly preempted by the National Uniformity for Nonprescription Drugs provision of the Food and Drug Administration Modernization Act, 21 U.S.C. § 379r because they impose on Walmart labeling requirements and standards for the Equate Gelcap Products labeling that are "different from or in addition to, or . . . otherwise not identical with" federal law.

1.   <u>The National Uniformity for Nonprescription Drugs Statute Expressly Preempts State Law Claims.</u>

The express preemption provision of the National Uniformity for Nonprescription Drugs Statute, 21 U.S.C. § 379r(a), provides that:

[N]o State or political subdivision of a State may establish or continue in effect any requirement –

(1)   that *relates to the regulation of a drug that is not subject to the requirements of Section 353(b)(1) or 353(f)(1)(A) of this Title* [5][*i.e., OTC drugs including the Equate products*]; and

---

[5] Section 353(b)(1) deals with dangerous prescription drugs which require medical professional supervision, while Section 353(f) covers veterinary prescription drugs.

> (2)     that is *different from or in addition to, or that is otherwise not*
>
> *identical with, a requirement* under [the Food, Drug, and Cosmetic Act
>
> ("FDCA")] ….

*Id.* (emphasis added).   The intent and language of § 379r is clear, and unambiguously preempts state law that relates to the regulation of OTC drugs.   *See Gisvold v. Merck & Co., Inc.*, 62 F. Supp. 3d 1198, 1202 (S.D. Cal. 2014).   Congress's intent is also expressed in the statute's heading: "National Uniformity for Nonprescription Drugs."   *See I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.,* 502 U.S. 183, 189 (1991) (holding that a section's title can aid in its interpretation).   Congress's express policy in § 379r in favor of "national uniformity" would be defeated if courts or juries in each state could decide for themselves whether to disregard the FDA's requirements for what dissolution rate constitutes a rapidly dissolving acetaminophen gelcaps/tablets.   As long as the claim "imposes a 'requirement' that is at variance with FDA regulations, it is preempted."   *See Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008).

In *Carter*, the court granted the defendant's motion to dismiss after finding all of the plaintiff's claims were preempted by Section 379r.   The court noted that the Supreme Court has held that in the context of statutory preemption, claims under state law and common law—such as those asserted here—may be preempted.   *Id.* at 1281 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992)).   The court in *Carter* also acknowledged the Supreme Court's "particularly broad view" of what state law "requirements" meant.   *Carter*, 582 F. Supp. at 1281 (citing *Riegel v. Medtronic*, 555 U.S. 312 (2008) (ruling plaintiff's state law claims based on, *inter alia*, defendant's marketing and sale of a medical device were expressly preempted under § 360k(a) of the FDCA, a parallel preemption statute virtually identical to § 379r for medical devices)).   Finally, the court in *Carter* noted that:

> The touchstone for preemption under § 379r is the *effect* that a finding of
> liability on a particular claim would have on the Defendants, and not the
> particular common law or state law theory upon which that claim was

4825-9775-4502.8

1     brought.  As long as that claim imposes a "requirement" that is at variance

2     with FDA regulations, it is preempted.

3     *Carter*, 582 F. Supp. at 1283 (emphasis in original).

4          Further demonstrating the broad preemptive effect of section 379r is *Bowling v.*

5     *Johnson & Johnson*, where plaintiffs brought state law claims that were not identical to

6     the federal standards.  *See* 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014).  The plaintiffs

7     brought an action based on Listerine's representation that using it "restores enamel." *See*

8     *id*. at 376.  However, the FDA had not prohibited such a label and the burden was on the

9     plaintiff to demonstrate the labeling was prohibited by FDA.  *See id*.  The court found

10    preemption appropriate when a state law prohibits labeling permitted by federal law, and

11    even further, when it varies at all from federal law.  *See id*.  Based on section 379r and the

12    monograph applicable in *Bowling*, the court found these claims to be expressly preempted.

13    *See id*.  In this highly regulated area, as described below, "[i]t is up to the FDA" to decide

14    what is false and misleading, not a court.  *See id*. at 377.

15        2.   <u>An Extensive Federal Regulatory Scheme Governs OTC Drugs.</u>

16          There exists an extensive federal regulatory scheme enacted by FDA governing

17    every aspect of OTC medication.  The FDCA prohibits the misbranding of drugs, FDCA

18    §502(a), 21 U.S.C. § 352(a), and the FDA regulates the labeling of OTC drugs.   In

19    particular, 21 C.F.R. § 201.66 contains extensive regulations regarding OTC drug

20    labeling, and applies to "the content and format requirements for the labeling of all OTC

21    drug products.  Where an OTC drug product is the subject of an applicable monograph or

22    regulation that contains content and format requirements that conflict with this section,

23    the content and format requirements in this section must be followed unless otherwise

24    specifically provided in the applicable monograph or regulation."  21 C.F.R. § 210.66(a).

25          Federal regulations have the force of binding federal law and thus, any state law

26    that is inconsistent or distinct from a federal regulation is preempted.  The Code of Federal

27    Regulations contains a detailed section on OTC human drugs which are generally

28    recognized as safe, effective and not misbranded.  *See* 21 C.F.R. Part 330.  Under the FDA

                                       

4825-9775-4502.8

regulations, the labeling on an OTC drug must be clear, truthful, and neither false nor misleading so that an ordinary individual can understand the meaning. *See id.* at (a)(4)(v). Any product that does not conform to the approved specifications is subject to regulatory enforcement action. *See id.* at 330.10(b).

Additionally, FDA has regulated OTC drugs, like the Equate acetaminophen gelcaps, through a tentative final monograph and official FDA guidance. The tentative final monograph incorporates the dissolution testing methodology and dissolution standards for acetaminophen Immediate Release Tablets[6] contained in the USP, as explained below.

a.   *The FDA Monograph*

As part of its regulation of OTC drugs, the FDA in 1988 issued a tentative final monograph.[7]  Monographs are applicable to non-prescription drugs such as the Equate Gelcap Products at issue here, and are issued by FDA.  After going through a detailed review and public rulemaking process, the FDA publishes its conclusions in the Federal Register,[8] at which point the OTC drug monographs are regulations of the FDA and thus enforceable by FDA.  *Weinberger v. Bentex Pharmas. Inc.*, 412 U.S. 645, 650-51 (1973). An OTC drug sold pursuant to a monograph must meet "each of the conditions continued in any applicable monograph." 21 C.F.R. § 330.1.  Courts have ruled that FDA monographs have preemptive effect against state law.  *See, e.g. Mills v. Warner-Lambert*, 581 F. Supp. 2d 772, 787 (E.D.T.X, 2015) (holding a plaintiff's claims regarding the labeling of OTC drugs were preempted by the FDA monograph); *see also Bowling*, 65 F. Supp. 3d at 376-77 (same).

The FDA issued a tentative final monograph for certain OTC drugs, including those which contain acetaminophen, in 1988.  *See* 21 C.F.R. § 343 ("Internal Analgesic,

---

[6] As noted in n.1, *supra*, gelcaps are simply tablets that are coated in gelatin or a similar substance, and are subject to the same dissolution testing methodology and standards as all Immediate Release tablets.

[7] U.S. Food and Drug Administration, *Over-the-Counter (OTC) Drug Monograph Process*, available at https://www.fda.gov/drugs/developmentapprovalprocess/howdrugsaredevelopedandapproved/ucm317137.htm (last accessed Feb. 4, 2019).  (RJN, Ex. C).

[8] *Id.*

-8-

Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use") (the "1988 TFM").   A tentative final monograph establishes "conditions under which a category of OTC drugs or specific OTC drugs are generally recognized as safe and effective and not misbranded." 21 C.F.R. § 330.10(a)(7).  Objections to the tentative final monograph must be submitted within 12 months of it being published and an oral committee hearing is held.  *See* 21 C.F.R. §§ 330.10(a)(7)(iii), (a)(8).  Subsequently, a final monograph should be published after a review of the record and suggestions.  *See* 21 C.F.R. § 330.10(a)(9).  Any product that does not conform "to an applicable monograph after its effective date is liable to regulatory action." 21 C.F.R. § 330.10(b).  While the FDA has not issued a final monograph for OTC acetaminophen products, *a tentative final monograph such as the 1988 TFM has the force and effect of a final monograph.*  This is because FDA regulations state that when an over the counter drug monograph "has not been finalized and finalization is not imminent…the agency may publish a notice of enforcement policy that allows marketing to begin pending the completion of the final monograph…." 21 C.F.R. § 330.14(h).  Indeed, the 1988 TFM has been treated as an enforceable legal requirement by FDA.  *See* American Family Pharmacy Warning Letter, discussed in section A.2.d below; s*ee also Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 459 (2015) (finding implied preemption where labeling complied with FDA tentative final monograph).

The 1988 TFM specifies requirements for the active ingredients (§ 343.10), labeling (§ 343.50), labeling of permitted combinations of active ingredients (§ 343.60), professional labeling (§ 343.80), and testing procedures (§ 343.90).  According to the 1988 TFM, labels are required to state the product's identity, list appropriate indications as provided in the monograph, label for children's use, and include warnings and directions.  *See* 21 C.F.R. § 343.50.  Most importantly here, the 1988 TFM requires the testing procedures for acetaminophen and aspirin tablets to meet the dissolution standard as contained in the USP, which are described below.  *See* Fourth Interim Revision Announcement <711> Dissolution, U.S. Pharmacopeia (last revised Nov. 21, 2016),

available at https://www.usp.org/sites/default/files/usp/document/harmonization/gen-method/q01_pf_ira_33_4_2007.pdf (last accessed Feb. 4, 2019).  (RJN. Ex. H.)

        b.    *FDA Guidance*

FDA has also regulated the testing methodology and dissolution standards for OTC acetaminophen tablets through two FDA Guidances.  These Guidances are Dissolution Testing and Acceptance Criteria for Immediate-Release Solid Oral Dosage Form Drug Products Containing High Solubility Drug Substances, Guidance for Industry, U.S. Dept. of Health and Human Services Food and Drug Administration (Aug. 2018) (the "Dissolution Testing Guidance") (RJN, Ex. A); and the In Vivo Immediate-Release Guidance for Industry (RJN, Ex. B).

An FDA guidance contains the FDA's detailed description of the federal law, and such guidance has been interpreted by courts to preempt state law.  *See Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011) *vacated pursuant to settlement*; *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 142 F. Supp. 3d 747 (N.D. Ill. 2015).  In *Degelmann*, applicable FDA guidance addressed specific requirements for contact lens solutions to be called a "disinfecting" solution.  *See Degelmann*, at 841-42.  The contact lens solution at issue met the FDA requirements for "disinfecting" contained in the Guidance. *Id.* at 842.  The plaintiff in *Degelmann* alleged that the product's packaging and labeling was false and misleading because the solution did not disinfect against a certain strain of bacteria. *Id.*  The Ninth Circuit found that a requirement that the product must meet an additional standard in order to utilize the term "disinfecting" would necessarily mean that the UCL and FAL "would have a requirement that is additional to the federal requirements." *Id.*  Thus, the Ninth Circuit found that the UCL and FAL were preempted. *See also In re Testosterone Replacement Therapy Prods.* at 754 (granting a motion to dismiss where the court relied on the FDA's labeling guidance in ruling that manufacturers are prohibited from altering warning labels under federal law).

Courts have interpreted FDA guidance to establish legally enforceable requirements. *See Degelmann*, 659 F.3d at 841-42; *see also United States ex rel. Modglin*

-10-

*v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1379-80 (C.D. Cal. 2014) (judicially noticing FDA guidance). The Dissolution Testing Guidance establishes the standard dissolution methodology and criteria for highly soluble drug substances. (*See* RJN, Ex. A, p. 2.) The Dissolution Testing and Acceptance Criteria Guidance states that in order for oral drug products with a high solubility to be considered "immediate release," the dissolution rate must be 80% in 30 minutes. (*See id*. at 5.) Further FDA guidance on solubility testing and standards is contained in the Waiver of In Vivo Immediate-Release Guidance, which defines an acetaminophen tablet as being "rapidly dissolving" when a mean of 85% or more of the drug substance dissolves within 30 minutes. (*See* RJN, Ex. B at 3.) Such a product is considered "very rapidly dissolving" if a mean of 85% or more dissolved within 15 minutes. (*See id*.) This Guidance explains how to determine a substance's permeability class and dissolution characteristics, in addition to what data supports high solubility, permeability and rapid release. (*See id*. at 5-9, 13-14.)

c. *The USP Dissolution Standards for Acetaminophen Immediate Release Tablets*

The 1988 TFM specifically references and incorporates the USP[9] provisions for the testing methodology and standards for immediate release acetaminophen tablets. The USP dissolution testing information provides specifications for the testing apparatus, how the testing procedure should be done, and accepted release times for immediate, extended, and delayed release products.[10]

When a drug complies with USP standards, it necessarily meets all the requirements stated in the article's monograph, applicable General Chapters, and General Notices. (*See* USP FAQ, RJN, Ex. G). Additionally, Congress has given USP standards a role in certain misbranding provisions of the FDCA.[11] *See id.* The USP is the authoritative standard

---

[9] USP is a non-profit, independent organization that sets standards for drugs, dietary supplements and food ingredients.*See* FAQs: USP and its Standards, U.S. Pharmacopeia, http://www.usp.org/frequently-asked-questions/usp-and-its-standards (last visited: February 4, 2019) ("USP FAQ"). (*See* RJN, Ex. G.)
[10] *See* Fourth Interim Revision Announcement <711> Dissolution, U.S. Pharmacopeia (last revised November 21, 2016), https://www.usp.org/sites/default/files/usp/document/harmonization/gen-method/q01_pf_ira_33_4_2007.pdf. (last visited: February 4, 2019). (*See* RJN, Ex. H.)
[11] For example, "[u]nder Federal law, a drug with a name recognized in [USP] must comply with the

upon which products are held to a minimum standard, unless the FDA has instituted a stricter specification.  For example, the USP is considered an "authoritative industry reference guide for on- and off-label uses of prescription drugs." *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 08-1934 PSG (ARGx), 2009 U.S. Dist. LEXIS 58697, *11 (C.D. Cal. 2009).

> d.     *FDA Enforcement of Misbranded OTC Drugs*

Using its authority under the FDCA, FDA regulations, the TFM and the USP dissolution standards, FDA enforces violations of misbranded OTC internal analgesics, including acetaminophen products.  *See* U.S. Food and Drug Administration, OTC Warning Letters, https://www.fda.gov/Drugs/GuidanceComplianceRegulatory Information/EnforcementActivitiesbyFDA/ucm285283.htm#internal (last visited January 23, 2019).  For example, one such warning letter accuses the manufacturer of misbranding because the aspirin tablets failed to meet the USP dissolution standard set for in the USP, in accordance with 21 C.F.R. § 343.90(c), i.e., the 1988 TFM.

FDA also tested dissolution on a sample of "Aspirin Enteric Safety Coated Tablets." It failed to meet the USP dissolution specifications for delayed released tablets in accordance with 21 C.F.R. § 343.90 (c), which states, "aspirin delayed-release tablets must meet the dissolution standard for…aspirin delayed-release tablets as contained in U.S.P, XXI Supplement 3 at page…1973."  Therefore, the product is misbranded under section 502(a) of the Act.  *See* 21 U.S.C. § 352(a). It is marketed as an enteric coated aspirin tablet without meeting the dissolution testing requirements.  *See* Warning Letter, 2015-DET-17, American Family Pharmacy, LLC 7/30/15,  https://www.fda.gov/ICECI/Enforcement Actions/WarningLetters/2015/ucm470016.htm (last visited February 4, 2019).   The warning letter threatens the following "legal action":

> You should take prompt action to correct the violations cited in this letter.

> Failure to promptly correct these violations may result in legal action

---

current version of compendial standards deemed official by USP, or risk being deemed adulterated, misbranded, or both (FDCA 501(b) and 502(e)(3)(b); FDA regulations 21 C.F.R. 299.5(a&b))."

without further notice including, without limitation, seizure and injunction. Other federal agencies may take this warning letter into account when considering the award of contracts.  Additionally, FDA may withhold approval of requests for export certificates, or approval of pending drug applications listing your facility, until the above violations are corrected.  A reinspection may be necessary.

(*See* RJN, Ex. D.)   Another FDA warning letter concerning acetaminophen tablets threatened a manufacturer with enforcement action for failing to include the warning required on the product label, and relied on the 1988 TFM as authority for the FDA taking legal action:

the Acetaminophen products are intended to be used as OTC internal analgesics and antipyretics.  When offered for these uses, acetaminophen is covered by FDA's OTC Drug Review, though it is not yet subject to a final OTC drug monograph.  See Tentative Final Monograph for Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use, 53 Fed. Reg. 46204 (Nov. 16, 1988).  These acetaminophen products are misbranded under section 502(f)(2) of the Act (21 U.S.C. § 352 (f)(2)) because they do not bear all of the warnings presently required for OTC acetaminophen-containing drug products.

Warning Letter FLA-07-02, Direct Dispensing, Inc., 11/02/06, https://wayback.archive-it.org/7993/20170112201616/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2006/ucm076153.htm (last visited February 4, 2019). (*See* RJN, Ex. E.)

3.   Plaintiffs' Claims Are Expressly Preempted by Section 379r

Plaintiffs' claims are preempted under section 379r because they impose on Walmart labeling requirements and standards for the Equate Gelcap Products labeling that are "different from or in addition to, or . . . otherwise not identical with" federal law. Initially, Plaintiffs' claims unquestionably "relate to the regulation" of an OTC drug given

///

-13-

Case No. 2:18-cv-9655-GW-FFM

that they are premised on the labeling of acetaminophen.[12]   That is the exact area of regulation encompassed by the FDA regulatory scheme described above.  And any failure by Walmart to comply with these FDA rules with respect to the labeling of the Equate Gelcap Products would expose it to potential enforcement action by FDA.[13]

While the FAC alleges that the Equate Gelcap Products are falsely labeled as "Rapid Release," this allegation is contradicted by the FDA standards.  The Equate Gelcap Products easily comply with these FDA requirements, as according to the Study relied on in Plaintiffs' FAC, the Equate Gelcap Products tested averages the 80% dissolution within nine (9) minutes—more than three times faster than the rate required by the FDA.  According to the Study, the Equate Gelcap Products meet the USP standards for immediate release acetaminophen tablets.

Plaintiffs' claims, however, would have the FAL, UCL, CLRA, and the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790) (the "Song-Beverly Act") and Uniform Commercial Code (the "UCC") set out additional and different labeling requirements and standards for the OTC drug at issue here.   Plaintiffs allege that Walmart's labeling of the Equate Gelcap Products is false, misleading and/or deceptive.  For this to be the case, these statutes would apparently require an OTC drug to be the *fastest* release requirement in order to use a label bearing the term "rapid release," or require the label to say "rapid release but other products may be more rapid."  Indeed, Plaintiffs' Prayer for Relief requesting "Walmart to adequately represent the true nature, quality, and capability of the" Equate Gelcap Products, as well as seeking an order for "a nationwide recall" and the issuance of "warnings and/or notices to consumers" regarding

---

[12] For express preemption under Section 379r for the mislabeling claims asserted here, it is not required for a defendant to show that it would be impossible to comply with both the federal law and the state law. A defendant seeking to preempt a state law products liability claim has to show "conflict" or "impossibility" preemption, *i.e.*, that it would be impossible to comply with both the FDA labeling requirements and the state law's requirements.

[13] The FDA has never expressed any concern about the labeling of the Equate Gelcap Products, including the "Rapid Release" label statement, despite the fact that these products have been on the market for years.

-14-

Case No. 2:18-cv-9655-GW-FFM

the Equate Gelcap Products' qualities[14] demonstrates the degree to which Plaintiffs' claims impermissibly intrude on an area that Congress empowered FDA to regulate. Accordingly, like the claims in *Carter*, the claims here would require Walmart to alter its labels to include on those labels statements that are different from what the FDA regulatory scheme requires.  In other words, if Walmart had any liability under the state law causes of action alleged by Plaintiffs, the *effect* on Walmart would be to require it to alter its label.  *Carter*, 582 F. Supp. at 1283.

Because Plaintiffs' claims purport to regulate OTC drugs, and because they would require something more than the FDA regulatory scheme for OTC drugs, Plaintiffs' FAC is expressly preempted by the National Uniformity for Nonprescription Drugs Statute.

**B.    If Plaintiffs' Claims Are Not Preempted, They Should Be Dismissed Under the Doctrine of Primary Jurisdiction.**

The Court should dismiss the FAC under the doctrine of primary jurisdiction because the central issue in this case—the meaning of the term "rapid release"—is within the regulatory authority and oversight of the FDA, the federal agency vested with jurisdiction over this issue.  The primary jurisdiction doctrine is invoked by a court when "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

As reflected in the extensive regulatory scheme described above, FDA has jurisdiction to enforce (and does enforce) the labeling requirements for OTC drugs, including the Equate Gelcap Products.  While Walmart believes these FDA regulations and dissolution standards are unambiguous and that Plaintiffs' claims would require actions different to or in addition to what the FDA has prescribed under section 379r, to the extent the Court were to disagree, it should dismiss the FAC and defer to FDA to clarify or determine any such ambiguity in the regulations and to take any enforcement

---

[14] FAC. at pp. 38-39.

-15-

action FDA believes appropriate under the doctrine of primary jurisdiction.  The use of the words "rapid release" based on dissolution time for acetaminophen tablets or gelcaps should be left to FDA, and not to the courts.  *See Gisvold*, 62 F. Supp. 3d 1198, 1203 (S.D. Cal. 2014).  Relevant to the present case, under the doctrine of primary jurisdiction, courts must defer to an administrative agency when the issue involves technical considerations and is within the agency's discretion.  *Id*.  A complex dissolution rate is clearly within the technical realm, and under section 379r, the FDA has discretion to regulate OTC drugs. If it is deemed not to have done so, the FDA should have the opportunity "to make initial determination on issues within its statutory mandate" and consequently, the case should be dismissed for lack of primary jurisdiction.  *Id.* at 1204 (quoting 21 C.F.R. § 10.25).

### C. Plaintiffs Fail to State a Claim Under California Consumer Protection Statutes.

#### 1. Plaintiffs Fail to Plausibly Allege that the Use of the Term "Rapid Release" on the Equate Gelcap Products Is False, Deceptive, or Misleading

Plaintiffs' UCL, FAL, and CLRA claims, which are all premised on the allegation that Walmart falsely and misleadingly labeled the Equate Gelcap Products as "Rapid Release," should be dismissed for failure to state a claim because Plaintiffs have not plausibly alleged that the use of the words "rapid release" on the Equate Gelcap Products labels are false, deceptive, or misleading.  The allegations of the FAC, the Study Plaintiffs rely on, and governing FDA regulations and Guidance *conclusively* prove that the Equate Gelcap Products *are* "Rapid Release."  Thus, Plaintiffs' complaint belies the very Study that it is based on, making it implausible that Plaintiffs' claims could entitle them to any relief.  Plaintiffs' misrepresentation-based UCL, FAL and CLRA claims also fail to comply with Rule 9(b)'s particularity pleading standard for claims of fraud and deception. *In re iPhone 4S Consumer Litig.*, 637 F. App'x 414, 415 (9th Cir. 2016) (applying Rule 9(b) to claims under California's consumer protection statutes because they are "grounded in fraud").  As in this Court's decision in *Carter*, Plaintiffs have only alleged that Walmart "knew or should have known" that the Rapid Release label was false and misleading (*see, e.g.,* FAC ¶ 73), but "provide no details of the alleged fraud."  *Carter,* 582 F. Supp. 2d at

-16-

1289; *see also Iqbal*, 556 U.S. at 678 (to avoid dismissal, Plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Plaintiffs' inability to state a claim against Walmart is highlighted by their allegation that the Equate Gelcap Products label, at most, "suggests" (not states) to consumers that Equate brand extra strength acetaminophen gelcaps work faster than other Equate acetaminophen products.  (*See* FAC, ¶¶ 75, 120.)  In this manner, Plaintiffs' entire case is predicated on reading into the Equate Gelcap Products label claims and representations that are not there.  As the product label illustrates, Walmart makes no comparative claim or superiority claim about the Equate Gelcap Products—the label only says "Rapid Release."  (FAC, ¶¶ 7-8, 59-60.)  There is no basis to challenge this statement—which is demonstrably true and in compliance with FDA requirements and industry standards—by alleging that the words "rapid release" mean that *all* or even some *other* products may be "less rapid."[15]

This very issue was addressed in *Dabish v. MusclePharm Corp.*, where the plaintiff alleged that the drug manufacturer's claim about the benefits of a certain compound were false or misleading.  2016 U.S. Dist. LEXIS 191885.  The plaintiff in *Dabish* cited to a study which concluded that the seller's compound was "not more effective" than a different compound.  *Dabish* at *24-25.  Regardless of the compounds' relative qualities, the *Dabish* court found that "none of the Class Product labels make any comparative representations between" the two compounds, and characterized the plaintiff's claims as comparing apples to oranges.  *Id.* at *25-26.  Moreover, the *Dabish* court found that while the complaint *alleged* that the manufacturer marketed the compound as "having 'some benefit'" over the other, it was evident that "no such statements appear on any of the Class Product labels."  *Id.* at *28.  The court concluded that the studies cited in the complaint

---

[15] Not only do the Equate Gelcap Products label not make any comparative claims, but the comparisons that the Plaintiffs unreasonably seek to make concern (i) content that does not exist and (ii) a price difference between different products –i.e., gelcaps designed to be easier to swallow versus base level tablets.

-17-                                                                    Case No. 2:18-cv-9655-GW-FFM

failed to "demonstrate the falsity of any of the alleged false statements on the Class Product labels," and accordingly dismissed the complaint pursuant to both rules 12(b)(6) and Rule 9(b). *Id*. at *26 (citing *Murray v. Elations Co., LLC*, No. 13-CV-02357-BAS WVG, 2014 U.S. Dist. LEXIS 107721, at *7) (S.D. Cal. Aug. 4, 2014) ("the cited studies must have a bearing on the truthfulness of the *actual representations made by Defendants*.") (emphasis added).

In this case, just like the plaintiff in *Dabish*, Plaintiffs attempt to read claims into the product label which simply do not exist. Nowhere in the entire FAC do Plaintiffs identify *any* claims on the labeling of the Equate Gelcap Products which compare the efficacy, quality, or dissolution rate of the Equate Gelcap Products to uncoated tablets or any other products. Rather, the only statement or marketing attributed to the Equate Gelcap Products is that the label says "rapid release." (*See* FAC, ¶¶ 7-8, 59-60.) The Study cited in the FAC does *not* disprove the labeling of the Equate Gelcap Products as "rapid release." To the contrary, the Study *proves* that the Equate Gelcap Products are "rapid release."

Moreover, as shown above, the Study cited in Plaintiffs' FAC in fact *does* substantiate the "Rapid Release" claim as it shows the Equate Gelcap Products easily satisfy the FDA standard and guidance for rapid release. "To avoid dismissal as a lack of substantiation claim, the [complaint] must allege specific studies demonstrating the falsity of these alleged statements." *Dabish* , at *23. In other words, in order to allege a valid claim, Plaintiffs' FAC must point to studies which prove that the phrase "Rapid Release" is false. Here, however, Plaintiffs have done the exact *opposite*. The only source mentioned in the FAC—the Study—*proves* that the Equate Gelcap Products achieve a rapid release rate.

In any event, Plaintiffs' reliance on the Study to claim that the Rapid Release label is not scientifically supported makes a "lack of substantiation" claim for the "Rapid Release" label, which Plaintiffs do not have standing to make. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (holding that "neither the UCL nor the CLRA

-18-

provides [a plaintiff] with a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws."); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW (JEMx), 2013 U.S. Dist. LEXIS 35069, at *11 (C.D. Cal. Feb. 21, 2013) ("Defendant is undoubtedly correct that Plaintiff may not base her claims on any purported lack of substantiation.").  Plaintiffs cannot sustain a claim for false advertising without alleging that scientific evidence expressly *refutes* the actual claim made by the product's packaging.  "A claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false. In contrast, a plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim." *Id.*  But, where a complaint does not allege studies demonstrating that the actual statements on a pharmaceutical's label are false, that complaint fails to state a claim.  *Dabish*, 2016 U.S. Dist. LEXIS 191885, at *23.

Finally, while the Equate Gelcap Products label description of "rapid release" is truthful and accurate, and in no way false or misleading, to the extent the Court were to find otherwise, it should still dismiss the FAC under the "mere puffery" doctrine.  In *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242 (9th Cir. 1990), the Ninth Circuit was unwilling to make the leap that a general claim about a product or service made a specific comparison, and instead found the statement to constitute puffery.  The Ninth Circuit came to this conclusion based at least in part upon the decision in *Smith-Victor Corp. v. Sylvania Electric Products, Inc.*, 242 F. Supp. 302 (N.D. Ill. 1965).  In that case, the court found that "[a]dvertising which merely states in general terms that one product is superior is not actionable." *Id.* at 308.  The *Smith-Victor* court, however, held that specific statements about the products such as "35,000 candle power and 10-hour life" were potentially actionable.  *Id.* at 308-309.  Having found no such claims in the case before it, the Ninth Circuit affirmed dismissal.

In this case, Plaintiffs ask this Court to make the same type of leap that the Ninth Circuit was unwilling to make:  to decide that "rapid release" means the product releases

more rapidly than any other product, or even a specific product. Perhaps if the Equate Gelcap Products had labels which said "dissolves in five minutes" or "dissolves faster than standard acetaminophen tablets" or "the fastest dissolving acetaminophen product," such statements might be actionable. But a general statement like "rapid release" is nothing more than "puffery" under the Ninth Circuit's reasoning in *Cook, Perkiss*.

  2. <u>Plaintiffs Have Failed to Allege a Duty to Disclose to Support a Concealment Claim</u>

  Because the truthful product package labeling effectively guts Plaintiffs' claims predicated on any affirmative misrepresentation, deception, and/or fraud, Plaintiffs attempt to build a case for concealment based on the notion that Walmart did not disclose that the Equate Gelcap Products allegedly work slower than other non-rapid release acetaminophen Walmart products. (FAC, ¶¶ 17, 120, 131-133.) For non-disclosure to be actionable, there must be a legal duty to disclose in the first place. "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007). "This is because a consumer is not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place." *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 985-988 (2008).

  Plaintiffs have not plausibly alleged any facts that demonstrate that Walmart had a duty to disclose to Plaintiffs and other consumers that other products worked faster merely because it used the words "rapid release" on the Equate Gelcap Products label. Plaintiffs try to manufacture a duty by alleging that Walmart was in a superior position to know the "true facts" about the Equate Gelcap Products. (*Id.* at ¶ 131.) But superior knowledge regarding a product alone does not give rise to a legal duty to disclose. *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1990) (finding that the duty to disclose facts arises if a person undertakes to speak, so that the speaker is bound not only to tell the truth but also not to suppress or conceal facts within speaker's knowledge that *materially qualify* those stated, because one who speaks at all must make a full and fair disclosure).

-20-              Case No. 2:18-cv-9655-GW-FFM

The factual allegations in the FAC do not support the creation of an affirmative duty to make the specific disclosures sought by Plaintiffs.

       3.    <u>Plaintiff Edwards Lacks Standing to Assert FAL, UCL and CLRA Claims</u>

To establish standing under the FAL, UCL or CLRA, a plaintiff must show that the defendant's conduct was "an immediate cause of the injury-producing conduct." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011). A plaintiff can demonstrate an injury related to an advertisement by alleging that "he or she would not have bought the product but for the misrepresentation." *Id.* at 330. If the plaintiff would have made the same purchasing decision regardless of the statement, then there is no actionable injury because the advertisement did not affect the purchase. *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1555 (2011).

Here, Plaintiff Edwards lacks standing to assert an FAL, UCL, or CLRA claim against Walmart because her allegations show that she did not rely on the "rapid release" language in the Equate Gelcap Products label in making her purchase decision. Instead, Edwards admits she bought the Equate Gelcap Products on the "advice of her doctor" because her doctor "specifically recommended" the Equate Gelcap Products to treat her chronic migraines and tooth pain associated with her wisdom teeth surgery. (FAC, ¶¶ 77-79.)

**D.    California's Safe Harbor Doctrine Bars Plaintiffs' FAL, UCL and CLRA Claims**

A separate and independent reason for dismissing Plaintiffs' claims under the UCL, FAL and CLRA as a matter of law is that they are barred by the California safe harbor doctrine because Walmart has complied with the FDA's regulatory scheme for using the words "rapid release" on the package labeling for Equate Gelcap Products. In *Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), the California Supreme Court recognized a common law safe harbor that insulates a defendant from civil liability for conduct compliant with governing legal authority: "Courts may not simply impose their own notions of the day as to what is fair or unfair…. If the Legislature

has permitted certain conduct … courts may not override that determination." *Id.* at 182. This safe harbor doctrine applies to regulations—not just statutes. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1166 & n.3 (9th Cir. 2012). Since *Cel-Tech*, courts have extended the safe harbor doctrine to apply to CLRA and FAL claims. *See, e.g. Ebner v. Fresh Inc.*, SACV 13-00477 JVS (RNBx), 2013 U.S. Dist. LEXIS 188889, at *4-6 (C.D. Cal. Sept. 11, 2013) (applying safe harbor doctrine to UCL, CLRA, and FAL claims).

In *Ebner*, this Court found that a seller of cosmetics had literally complied with an FDA requirement to state the quantity of a product in the package that was sold to the public. The plaintiff, however, argued that a portion of the lip balm product at issue was not actually accessible to consumers, and therefore the sellers misled consumers with their labels. This Court rejected that argument, holding that "if the FDA found that stating the net quantity did not provide consumers with proper value comparisons, it could issue further regulations. … But to the Court's knowledge, the FDA has not found it necessary to designate alternative or additional requirements for products such as Defendant's." *Id*. at *13. Because the defendant's claims about its product literally complied with FDA requirements, this Court found that the seller's label of net quantity could not be the basis for liability under the UCL, CLRA, or FAL under the "safe harbor" doctrine.

Here, as discussed above in detail, the Equate Gelcap Products fall squarely within the requirements for a "rapid release" acetaminophen OTC product according to FDA guidance and regulations. As Plaintiffs are attempting to "impose their own notions of the day as to what is fair or unfair" in terms of using the words "rapid release" based on dissolution standards for acetaminophen products, even after the FDA has made clear determinations in the area, the California safe harbor doctrine bars Plaintiffs' UCL, FAL, and CLRA claims.

### E.   Plaintiffs Fail to State a Claim for Breach of Implied and Express Warranty.

Plaintiffs' claims for breach of warranty of merchantability under the Song-Beverly Act and the UCC must be dismissed because the FAC does not plausibly allege that

-22-                                                                     Case No. 2:18-cv-9655-GW-FFM

Walmart breached any warranty with regards to the Equate Gelcap Products.  The Song-Beverly Act requires that the products "[c]onform to the promises or affirmations of fact *on the container or label*."  Cal. Civ. Code § 1791.1(a) (emphasis added).[16]  The language of UCC § 2-314(2) is nearly identical, requiring that the goods "[c]onform to the promises or affirmations of fact made on the container or label if any."  An action for breach of implied warranty under either the Song-Beverly Act or the UCC is confined to the words expressly used by the manufacturer or seller, not the perception of an individual.  The implied warranty of merchantability "does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality.'"  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852 (N.D. Cal. Oct. 11, 2012) *quoting American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-1296 (1995).  A product satisfies the implied warranty of merchantability if it is "in safe condition and substantially free of defects."  *Elias*, at 852, quoting *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009).

In this case, the Equate Gelcap Products conform to the statements on the label.  There is only one statement at issue: "Rapid Release."  Contrary to Plaintiffs' allegations, the Equate Gelcap Products are "Rapid Release" by any applicable measurements, and more importantly by specific FDA standards that control.  Plaintiffs' allegation that the Equate Gelcap Products may not dissolve as quickly as certain other products is irrelevant for purposes of this claim, because such comparative language never appears "on the label" at all.

Moreover, Plaintiffs have not alleged any defects in the Equate Gelcap Products which might affect their fitness of use.  The purpose of the implied warranty of merchantability is not to permit a consumer or a plaintiff to infer qualities about the product which are not actually warranted.  Such a rule would permit endless lawsuits.

---

[16] Also note that this Act provides an implied warranty of between 60 days and one (1) year.  Cal. Civ. Code § 1791.1(c).  Therefore, to the extent that Plaintiffs' claims seek violations of the implied warranty of merchantability reaching back "[o]ver the last two years," such claims are barred by the statute of limitations.

-23-                                                    Case No. 2:18-cv-9655-GW-FFM

Rather, a seller is only responsible for those explicit promises it made regarding its products.  Here, Walmart delivered on the promise of rapid release.  Accordingly, Plaintiffs' claims for breach of implied warranty fail.

Plaintiffs' express warranty claim under UCC § 2-313 rests upon the same allegations, and must also fail.  Although Plaintiffs allege that the Equate Gelcap Products "did not conform to the representations and descriptions Walmart made to consumers," (FAC, ¶ 164), the only statements forming the basis for a bargain was that the Equate Gelcap Products have a rapid release—an accurate and true description.

Finally, Plaintiffs' Magnusson-Moss Warranty Act ("MMWA") claims must be dismissed.  In *Route v. Mead Johnson Nutrition Co*., this Court held that plaintiffs have to allege a written warranty as defined by the MMWA.  As is true here, plaintiffs' claim, that products were designed to act more like breast milk, did not promise any specific performance over any specific time period or promise any refunds or remedies as required. 2013 U.S. Dist. LEXIS 35069, at *20; *see also* 15 U.S.C § 2301(6).  Similarly, Walmart's "Rapid Release" label does not promise any specific performance, or if it is construed to have done so, the Study Plaintiffs cite proves that the Equate Gelcap Products meet the FDA standard governing rapid dissolution and release.

Furthermore, having shown that there is no basis for a claim under the Song-Beverly Act or the UCC, the law is clear that "disposition of the state law warranty claims determines the disposition of the Magnusson-Moss Act claims."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); see also *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 833 (2006) (holding that "the trial court correctly concluded that failure to state a warranty claim under state law necessarily constituted a failure to state a claim under Magnusson-Moss.").  These derivative claims must therefore also be dismissed.

Plaintiffs' MMWA claim also fails because the words "Rapid Release" on the Equate Gelcap Products labeling does not constitute a written affirmation for a specified time period.  A label, without something more, is not a warranty.  *Bowling v. Johnson &*

-24-

*Johnson*, 65 F. Supp. 3d 371, 377-378 (S.D.N.Y. 2014).  In *Bowling*, the plaintiff argued that a mouthwash label which stated the product "Restores Enamel" constituted a warranty.  *Id.* at 373.  The court, in reviewing the MMWA, took issue with that warranty claim as it pertains to the Act's definition of a "warranty" as a "written affirmation" that the product will be "defect free or will meet a specified level of performance *over a specified period of time*."  *Id.* at 377-78 (emphasis in original).  In determining whether the two-word claim of "Restores Enamel" constituted such a written affirmation for a specified time, the court expressed serious concern over making that leap, concluding that doing so would mean that "virtually any grievance about a consumer product … would be actionable under the MMWA.  That is not how the statute was meant to work."  *Id.* at 378. The present case is strikingly similar to *Bowling*.  The two-word claim of "Rapid Release," with nothing more to guarantee quality for a period of time, is simply not actionable under the MMWA.  This Court should take the label for what it is, and dismiss the Magnusson-Moss Warranty Act claim.

## F.   Plaintiffs' Remaining Claims Must Also Be Dismissed

Finally, Plaintiffs' claims for Unjust Enrichment and Declaratory Relief also fail. In California, "a claim for unjust enrichment cannot stand alone as an independent claim for relief." *Iezza v. Saxon Mortg. Servs*, Case No. 10-03634 DDP JCGx, 2010 U.S. Dist. LEXIS 108883, at *5 (C.D. Cal. Sep. 28, 2010) *citing Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 911 (2008).  Where a plaintiff's "unjust enrichment claim is premised on the same alleged course of conduct that underlies her other claims," those claims must be dismissed. *Id.* at *6.  So too, where a plaintiff fails to plausibly allege that a defendant has committed wrongful conduct that underlies the remainder of her claims, a declaratory judgment claim must also be dismissed.  *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 944 (N.D. Cal. Sep. 15, 2015).   Plaintiffs' unjust enrichment and declaratory judgment claims are derivative and duplicative of their remaining claims, and rest upon the same set of flawed premises, and therefore must be dismissed.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.  CONCLUSION

For the foregoing reasons, this Court should dismiss the FAC in its entirety, with prejudice.

DATED:  February 5, 2019                **FOLEY & LARDNER LLP**


                                        /s/ Jaikaran Singh
                                        Jaikaran Singh
                                        Attorneys for Defendant
                                        Walmart, Inc.

4825-9775-4502.8