**SIMMONS HANLY CONROY LLC**
Crystal Foley (SBN 224627)
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
cfoley@simmonsfirm.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Mitchel M. Breit (*pro hac vice*)
100 Garden City Plaza
Garden City, New York 11530
mbreit@milberg.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| TOYA EDWARDS and JAMAL ERAKAT, on behalf of themselves and all others similarly situated, | Case No.: 2:18-cv-09655-GW-FFM |
| Plaintiffs, | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| WALMART, INC. | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Toya Edwards and Jamal Erakat, individually and on behalf of all others similarly situated, bring this action against Defendant Walmart, Inc. ("Walmart"). The following allegations are based upon personal knowledge as to

1

Plaintiffs' own conduct, the investigation of counsel, and upon information and belief as to the acts of others.

## **INTRODUCTION**

1.      Walmart is the world's largest retail company operating thousands of retail stores worldwide.

2.      Walmart stores sell all types of products to the American public, including toys, groceries, sports and outdoor equipment, electronics, home goods, school supplies, apparel, cosmetics, health and wellness products, and many more.

3.      As part of their health and wellness department, Walmart stocks and sells brand name over-the-counter drugs, such as acetaminophen products.

4.      In addition to selling brand name over-the-counter drugs, Walmart also produces, manufactures, markets, distributes, and sells a generic version of certain over-the-counter drugs under its own brand Equate™ to families, children, and other consumers.

5.      Walmart's Equate™ products include analgesic or pain-relieving medicines using acetaminophen.

6.      By way of background, in 2005, Johnson & Johnson Consumer Inc. introduced the name brand Tylenol® Extra Strength Rapid Release Gels to the American public as "specially designed" gelcaps "with holes to allow [for] the release of powerful medicine *even faster than before*."[1] Three years later, Tylenol® PM Rapid Release Gels were launched with the same promises.[2]

7.      Intending to capitalize on the success of name brand acetaminophen products, Walmart introduced its own version of these products: Equate™ Extra

---

[1]  https://www.tylenol.com/news/about-us (last accessed 11.15.2018) (emphasis added).
[2] *Id.*

Strength Acetaminophen Rapid Release Gelcaps and Equate™ Extra Strength Acetaminophen PM Rapid Release Gelcaps (the "Class Rapid Release Gelcaps").



3



4

---

[3] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-Release-Gelcaps-500-mg-24-Ct/10403810 (last accessed 11.15.2018).
[4] https://www.walmart.com/ip/4-Pack-Equate-Extra-Strength-Acetaminophen-PM-Rapid-Release-Gelcaps-500-mg-20-Ct/625528959 (last accessed 11.15.2018).

SECOND AMENDED CLASS ACTION COMPLAINT

8.　　Since the release of its generic versions of the rapid release gelcaps, Walmart has misled and continues to mislead consumers about the nature, quality, and effectiveness of its so-called rapid release Equate™ products through advertising and labeling.

9.　　In particular, the Class Rapid Release Gelcaps are marketed as comparable to their name brand counterpart even though, on information and belief, they do not contain the unique laser drilled holes the name brand counterpart boasts. The Equate™ rapid release gels are nonetheless labeled and advertised as a "rapid release" product.

10.　　Despite the technology used for the Class Rapid Release Gelcaps and despite what Walmart's labeling and advertising would have consumers believe, the term "rapid release" does not actually mean that the drug works faster for consumers than non-rapid release products.

11.　　Walmart has long known or should have known that traditional, non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its rapid release products.

12.　　In fact, a new study demonstrates that Walmart's Equate™ acetaminophen rapid release gelcaps dissolve *slower* than the Walmart non-rapid release products.[5]

13.　　Yet, Walmart charges a premium for its rapid release gelcaps.

14.　　Walmart sells its rapid release gelcaps with false, misleading, unfair, deceptive labeling and marketing in an effort to dupe consumers into purchasing

---

[5] Kucera, Jessop, Alvarez, Gortler, Light, *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets (last accessed 11.15.2018).

SECOND AMENDED CLASS ACTION COMPLAINT

the Class Rapid Release Gelcaps for prices that exceed their true value. Walmart has pursued and continues to pursue this course of conduct in order to profit off of unassuming, unwitting consumers looking for the fastest pain-relief possible from an over-the-counter acetaminophen product.

15.    Plaintiffs and Class members are consumers who were misled or deceived by Walmart's false, misleading, unfair, and deceiving representations and as a result purchased the Equate™ rapid release gelcaps.

16.    Plaintiffs would not have purchased the Class Rapid Release Gelcaps had Walmart disclosed accurate information about the products and not misled them into believing that the Class Rapid Release Gelcaps would provide faster relief than other, cheaper acetaminophen products, such as the traditional Equate™ tablets.

17.    Plaintiffs, thus, bring this class action against Walmart on behalf of herself and on behalf of all individuals who purchased the Class Rapid Release Gelcaps (the "Class") seeking damages and appropriate equitable relief given that Walmart's conduct violated well-established contract, tort, and consumer protection laws of California and the United States.

## PARTIES

18.    Plaintiff Toya Edwards is a citizen and resident of Lakewood, Los Angeles County, California.

19.    Plaintiff Jamal Erakat is a citizen and resident of Castro Valley, Alameda County, California.

20.    Defendant Walmart Inc. is a Delaware corporation, with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716.

## JURISDICTION AND VENUE

21.    This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because at least one member of the proposed

class is a citizen of a state different from Walmart; the amount in controversy exceeds $5,000,000, exclusive of interests and costs; the proposed class consists of more than 100 members; and none of the exceptions under the subsection apply to this action.

22.    This Court has jurisdiction over Walmart because it has sufficient minimum contacts in California and otherwise intentionally avails itself of the markets within California through the operation of several Walmart stores within the state as well as the promotion, sale, marketing, and distribution of its products, such that exercise of jurisdiction by this Court is proper and necessary.

23.    Venue is proper in this District under 28 U.S.C. § 1391 because Walmart conducts substantial business in this District and a substantial part of Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### I.    Acetaminophen Generally

24.    Acetaminophen, also called paracetamol or N-acetyl-para-aminophenol (APAP), is an over-the-counter pain reliever and fever reducer that comes in a variety of forms: liquid suspension, tablets, capsules, and gelcaps.[6]

25.    In any form, acetaminophen is used to treat a variety of common conditions including headaches, muscle aches, arthritis, backaches, toothaches, colds, fevers, acute pain,[7] chronic pain,[8] etc.

26.    Typically, it is the first treatment recommended for *any* mild to moderate pain.[9] Therefore, acetaminophen is one of the most commonly used drugs

---

[6] *Id.*

[7] https://www.drugs.com/acetaminophen.html (last accessed 11.15.2018).

[8] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.15.2018).

[9] *Id.*

in the world when it comes to pain mitigation representing an estimated global market value of over $350 million annually.[10] It is even included on the World Health Organization List of Essential Medicines.[11]

27.    Given the wide-spread use of acetaminophen, both the *quality* and *value* of acetaminophen products present important public health, consumer safety, and economic concerns.[12]

## II.    Walmart Seeks to Capitalize Off Name Brand Acetaminophen Products By Creating Generics

28.    By way of background, Tylenol® is the well-recognized name brand of acetaminophen.[13] It is produced, manufactured, and distributed by Johnson & Johnson.

29.    Generic brands, like Walmart's Equate™ brand, thus, seek to mimic the product offerings of Johnson & Johnson selling the generic version of the Tylenol® products for a price less than the name brand equivalent.

30.    But the profitability on the Class Rapid Release Gelcaps comes at much too high a price, both figuratively and literally: consumer deception about the true nature, quality, and value of the product.

## III.    The Deceptive Marketing of Class Rapid Release Gelcaps

31.    Marketing, product labeling, and affirmative representations regarding the rapid release gelcaps would deceive reasonable consumers by giving the impression that rapid release gelcaps actually provide faster relief than other

---

[10] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

[11] WHO. World Health Organization Model List of Essential Medicines. August 2017 ed. http://www.who.int/medicines/publications/essentialmedicines/en/2017 (last accessed 11.15.2018).

[12] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

[13] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.15.2018).

cheaper acetaminophen products, such as tablets. However, in reality, the rapid release gelcaps do not release more rapidly than non-rapid release acetaminophen products, and are, in fact, slower.

32.    Despite the fact that the "rapid release" gelcaps are not rapid release and do not work faster than other, traditional acetaminophen products, the rapid release gelcap products are sold at a premium, as compared to other acetaminophen products that are not classified as "rapid release."[14]

33.    In an effort to ensure that the Class Rapid Release Gelcaps can continue to command a price premium—and in an effort to ensure that Walmart continues to increase its profits from the Class Rapid Release Gelcaps—upon information and belief, Walmart places (and has placed throughout the class period) the Class Rapid Release Gelcaps on shelves in its retail stores within sight of, if not directly next to, its non-rapid release Equate™ acetaminophen product counterparts (such as caplets and tablets).

34.    Walmart has sold, and continues to sell, its Class Rapid Release Gelcaps at a higher price than its other equally effective and equally Equate™ fast-acting acetaminophen products that are not classified as "rapid release."

35.    The difference in price, and the fact that the Class Rapid Release Gelcaps are placed in close proximity to their non-rapid release Equate™ acetaminophen product counterparts, reinforces to consumers the false belief that the rapid release technology is both effective and worth more, particularly among Equate™ acetaminophen products. However, in reality, the Class Rapid Release Gelcaps are no more effective or fast-acting than their non-rapid release Equate™ acetaminophen product counterparts.

---

[14] Generally, rapid release gelcap acetaminophen products are sold on average at a price 23% higher than non-rapid release acetaminophen products. Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

36.     Walmart's strategy of placing the Class Rapid Release Gelcaps in close proximity to, or within eyesight of, their non-rapid release acetaminophen product counterparts in retail stores is meant only to deceive consumers into paying the price premium of the Class Rapid Release Gelcaps. This represents yet another method by which Walmart deceptively markets the Class Rapid Release Gelcaps to consumers in their retail stores.

37.     At the time the original complaint was filed, Walmart listed 6 Class Rapid Release Gelcap products on its website, including: Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps in quantities of 24, 100, and 225 gelcaps; Equate™ Extra Strength Acetaminophen PM Rapid Release Gelcaps in quantities of 20 and 80 gelcaps; and Equate™ Sinus Congestion & Pain Acetaminophen Rapid Release Gelcaps in quantities of 48 gelcaps.[15]

38.     Not all non-rapid release caplets and tablets are offered in the same quantities as the Class Rapid Release Gelcaps. However, a comparison of the prices of the Class Rapid Release Gelcaps to the equivalent caplets and tablets in the same counts demonstrates that Walmart charges *more* for the Class Rapid Release Gelcaps than its equivalent non-rapid release acetaminophen products.

39.     At the time the original complaint was filed, for example, Walmart sold a regularly priced 100 count bottle of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500mg, at $4.92, while a regularly priced 100 count bottle of Equate™ Extra Strength Acetaminophen tablets, 500 mg, cost $2.48.[16] There was a $2.44 price difference between the Class Rapid Release Gelcaps and the non-

---

[15] https://www.walmart.com/search/?cat_id=0&facet=brand%3AEquate&query=rapid+release#searchProductResult (last accessed 11.15.2018).
[16] https://www.walmart.com/search/?query=equate%20acetaminophen&cat_id=0&typeahead=equate%20ace (last accessed 11.15.2018).

rapid release product in this count, which represented over a 98% increase in price for the Class Rapid Release Gelcaps over the non-rapid release tablets.

40.    Currently, Walmart sells a regularly priced 100 count bottle of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500mg, at $4.92,[17] while a regularly priced 100 count bottle of Equate™ Extra Strength Acetaminophen tablets, 500 mg, costs $1.98.[18] There is a $0.92 price difference between the Class Rapid Release Gelcaps and the non-rapid release product in this count, which represents over a 148% increase in price for the Class Rapid Release Gelcaps over the non-rapid release tablets.

41.    At the time the original complaint was filed, a regularly priced 225 count bottle of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500 mg, was priced at $9.97, while a regularly priced bottle of Equate™ Extra Strength Acetaminophen caplets, 500 mg, was priced at $4.48.[19] There was a $4.48 price difference between the Class Rapid Release Gelcaps and the non-rapid release product in this count, which represented over a 100% increase in price for the Class Rapid Release Gelcaps over the non-rapid release caplets.[20]

42.    At the time the original complaint was filed, a regularly priced 24 count package of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500

---

[17] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-Release-Gel-Caps-500-mg-100-Count/777773177 (last accessed 08.23.2021).

[18] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Red-Sweet-Coated-Tablets-500-mg-100-Count/363114283 (last accessed 08.23.2021).

[19] https://www.walmart.com/search/?query=equate%20acetaminophen%20225 (last accessed 11.15.2018).

[20] Currently, Walmart sells a regularly priced 225 count bottle of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500 mg, priced at $9.97. https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-Release-Gelcaps-500-mg-225-Ct/10403812    (last    accessed    08.23.2021). However, Walmart does not offer a 225 count bottle of daytime non-rapid release acetaminophen tablets or caplets for sale.

SECOND AMENDED CLASS ACTION COMPLAINT

mg, was priced at \$1.96,[21] while a regularly priced 24 count package of Equate™ Extra Strength Acetaminophen caplets, 500 mg, was priced at \$1.48.[22] There was a \$0.48 difference between the Class Rapid Release Gelcaps and the non-rapid release product in this count, which represented over a 32% increase in price for the Class Rapid Release Gelcaps over the non-rapid release caplets.

43.     Currently, Walmart sells the regularly priced 24 count package of Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, 500 mg, was priced at \$1.96,[23] while the regularly priced 24 count package of Equate™ Extra Strength Acetaminophen caplets, 500 mg, was priced at \$1.48.[24] There is a \$0.48 difference between the Class Rapid Release Gelcaps and the non-rapid release product in this count, which represented over a 32% increase in price for the Class Rapid Release Gelcaps over the non-rapid release caplets.[25]

44.     Consumers have been willing to and continue to pay this premium because, as a result of false, misleading, unfair, and/or deceptive labeling and other advertising, they believe the Class Rapid Release Gelcaps work faster than other, cheaper acetaminophen products when in fact, they do not.

45.     Walmart did nothing to correct the thinking that "rapid release" gelcaps worked faster than other, cheaper acetaminophen products.

---

[21] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-Release-Gelcaps-500-mg-24-Ct/10403810 (last accessed 11.15.2018).
[22] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Caplets-500-mg-24-Ct/10324473 (last accessed 11.15.2018).
[23] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Rapid-Release-Gelcaps-500-mg-24-Ct/10403810 (last accessed 08.23.2021).
[24] https://www.walmart.com/ip/Equate-Extra-Strength-Acetaminophen-Caplets-500-mg-24-Ct/10324473 (last accessed 08.23.2021).
[25] Both these products currently are listed as "out of stock," but both are still included and marketed on Walmart's website.

46.    Instead, Walmart capitalized on that thinking and sought to further consumer deceit with its own false, misleading, unfair, and/or deceptive labeling and marketing.

47.    Walmart advertises its Class Rapid Release Gelcaps as "rapid release" products.[26]

## IV.    The Science Behind Rapid Release Products Demonstrates the Labeling and Marketing of the Class Rapid Release Gelcaps Are False, Misleading, Unfair, and/or Deceptive

48.    Despite what Walmart represents to the public about the Class Rapid Release Gelcaps, they do not work faster than other, cheaper Equate™ acetaminophen products, which do not claim to include "rapid release" technology (such as, for example, acetaminophen caplets or tablets).

49.    A 2018 study of the "rapid release" or "fast release" claims of acetaminophen products, including Equate™ Acetaminophen Rapid Release Gelcaps, revealed that these products not only fail to work faster, they actually work *slower* than their traditional acetaminophen counterparts, such as tablets.[27]

50.    Thus, the science demonstrates that Walmart's representations and advertising are false, misleading, deceptive, and unfair on their face.

51.    The level of deception and unfairness is elevated given that Walmart has long known or should have known that there is scant or conflicting evidence about the correlation of the speed and efficacy of its acetaminophen products to its rapid release gelcap design.

52.    Walmart knew or should have known of the existence of "contradictory claims for rapid or fast-release [acetaminophen] products."[28]

---

[26] *Id.*

[27] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.

[28] *Id.*

SECOND AMENDED CLASS ACTION COMPLAINT

53.     There is no proven significant efficacy difference between the Equate™ rapid release gelcaps and the Equate™ non-rapid release products to warrant Walmart's representations that the Class Rapid Release Gelcaps work faster than its non-rapid release products.

54.     Walmart knew or should have known that its representations about the Class Rapid Release Gelcaps were false, misleading, unfair, and/or deceptive. Walmart is responsible for its representations pertaining to the Class Rapid Release Gelcaps and investigating the truth or falsity of the same before presenting it to consumers, and for not correcting consumers' mistaken belief regarding the efficacy of "rapid release" technology as compared to non-rapid release acetaminophen products.

55.     Walmart should have had a basis for the representations it made on and in its labeling, packaging, advertising, and other marketing..

56.     Despite that Walmart knew or should have known that the Class Rapid Release Gelcaps did not work faster than its other Equate™ products, Walmart falsely marketed the Class Rapid Release Gelcaps as rapid release, suggesting to consumers that the Class Rapid Release Gelcaps worked faster than its other, cheaper, non-rapid release Equate™ acetaminophen products.

57.     Walmart's conduct induced and continues to induce unwitting consumers to buy the Class Rapid Release Gelcaps for a premium price—a price that exceeds the actual value of the product.

## **PLAINTIFFS' EXPERIENCE**

**Plaintiff Toya Edwards**

58.     Plaintiff Toya Edwards began purchasing the Class Rapid Release Gelcaps, specifically Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps in 24 count, about 2 years ago on the advice of her doctor.

59.    The Class Rapid Release Gelcaps were recommended as treatment for her chronic migraines and tooth pain associated with her wisdom teeth surgery.

60.    Her doctor specifically recommended rapid release gelcaps because they would allegedly alleviate her pain faster.

61.    Over the last two years, Plaintiff Edwards has purchased the Class Rapid Release Gelcaps at Walmart in Paramount, Los Angeles County, California.

62.    Plaintiff Edwards purchased the Class Rapid Release Gelcaps at a price more than the brand's acetaminophen tablet product in the same count.

63.    She purchased the Class Rapid Release Gelcaps over other Walmart brands and other acetaminophen products in part because they were advertised and labeled as "rapid release" offering "rapid relief."

64.    Walmart's marketing (labeling and advertising) misled Plaintiff Edwards to believe that the Class Rapid Release Gelcaps she purchased would provide faster relief than other cheaper Walmart acetaminophen products.

65.    Had Plaintiff Edwards known that the Class Rapid Release Gelcaps did not act any faster than traditional, cheaper Walmart acetaminophen products, she would not have been willing to pay the premium that she did for the Class Rapid Release Gelcaps. Instead, she would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

66.    The cost of the Class Rapid Release Gelcaps exceeded the value of the product and Plaintiff Edwards did not receive the benefit of the bargain.

**Plaintiff Jamal Erakat**

67.    Plaintiff Jamal Erakat last purchased the Class Rapid Release Gelcaps in October 2018 from his local Walmart store in Alameda County, California. Specifically, Plaintiff Erakat purchased a 24 count bottle of Equate Extra Strength

Acetaminophen Rapid Release PM Gelcaps at a cost more than the brand's acetaminophen PM tablet product in the same count.

68.    Plaintiff Erakat sought an acetaminophen product to treat sore muscles, headaches and insomnia.

69.    About two years ago, Plaintiff Erakat began purchasing the Class Rapid Release Gelcaps and since then he has purchased approximately one 24 count bottle at around five dollars a bottle every week or so.

70.    He purchased the Class Rapid Release Gelcaps over other Walmart brands and other acetaminophen products solely or in part because they were advertised and labeled as "rapid release" offering "rapid relief."

71.    Plaintiff Erakat would not have purchased the Class Rapid Release Gelcaps if they had not been labeled as "rapid release." Nor would he have purchased the product if he had known that the product did not work faster than traditional, cheaper acetaminophen products.

72.    Walmart's marketing (labeling and advertising) misled Plaintiff Erakat to believe that the Class Rapid Release Gelcaps he purchased would provide faster relief than other, cheaper Walmart acetaminophen products.

73.    Had Plaintiff Erakat known that the Class Rapid Release Gelcaps did not act any faster than traditional, cheaper Walmart products, he would not have been willing to pay the premium that he did for the Class Rapid Release Gelcaps. Instead, he would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

74.    The cost of the Class Rapid Release Gelcaps exceeded the value of the product and Plaintiff Erakat did not receive the benefit of the bargain.

## CLASS ACTION ALLEGATIONS

75.    Walmart's conduct violates the law. Walmart violated consumer protection laws, breached warranties, and unjustly enriched itself to the detriment of

consumers. Walmart's conduct is ongoing and is the basis for Plaintiffs' class action allegations.

76.    Plaintiffs represent a proposed class of hundreds of thousands of consumers who purchased the Class Rapid Release Gelcaps in Walmart retail stores, which were manufactured and distributed by Walmart and sold under the Equate™ brand name.

77.    Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), against Walmart, on their own and on behalf of the California Class defined below. Plaintiffs propose the California Class in the interest of judicial economy and efficiency.

**California Class:**
From November 15, 2014 to the present day, all persons who purchased from a Walmart retail store the Class Rapid Release Gelcaps in the State of California.

78.    At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiff reserves the right to modify these class definitions.

79.    "Class Rapid Release Gelcaps" include Equate™ Extra Strength Acetaminophen Rapid Release Gelcaps, and any other Equate™ or Walmart brand acetaminophen product labeled and/or marketed as "rapid release."

80.    Excluded from the proposed Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Walmart and any entity in which it has a controlling interest or which has a controlling interest in it; (c) the officers and directors of Walmart; (e) Walmart's legal representatives, assigns, and

successors; and (f) all persons who properly execute and file a timely request for exclusion from the Class.

81.    Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the California Class.

82.    **Numerosity**:  While the exact number of class members cannot yet be determined, the Class consists at a minimum of hundreds of people dispersed throughout the State of California, such that joinder of all members (the "Class Members") is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Walmart.

83.    **Commonality**:  Common questions of law and fact exist as to all members of the Class. Among the questions of law and fact common to the Class are:

      a.    Whether Walmart knew, or reasonably should have known, that the Class Rapid Release Gelcaps it placed into the stream of commerce would not function as advertised;

      b.    Whether the advertised "rapid release" feature of the Class Rapid Release Gelcaps is a material fact that reasonable purchasers would have considered in deciding whether to purchase the Class Rapid Release Gelcaps;

      c.    Whether the Class Rapid Release Gelcaps are of the quality and character Walmart promised to consumers;

      d.    Whether Walmart breached implied warranties relating to the Class Rapid Release Gelcaps;

      e.    Whether Walmart mispresented the characteristics, qualities, and capabilities of the Class Rapid Release Gelcaps;

17

f.   Whether Walmart made fraudulent, false, deceptive, misleading and/or otherwise unfair statements in connection with the sale of the Class Rapid Release Gelcaps on its labeling, in its advertising, and on its website;

g.   Whether Walmart engaged in unfair and deceptive trade practices pertaining to the Class Rapid Release Gelcaps;

h.   Whether Walmart was unjustly enriched as a result of selling the Class Rapid Release Gelcaps;

i.   Whether Walmart should be ordered to disgorge all or part of the profits it received from the sale of the Class Rapid Release Gelcaps;

j.   Whether Plaintiffs and Class Members are entitled to damages including compensatory, exemplary, and statutory damages, and the amount of such damages;

k.   Whether Plaintiffs and Class Members are entitled to equitable relief, including an injunction and requiring that Walmart engage in a corrective notice campaign and/or a recall of the Class Rapid Release Gelcaps to address misrepresentations and misleading statements on the packaging; and

l.   Whether Plaintiffs and Class Members are entitled to an award of reasonable attorneys' fees and pre-judgment interest, post-judgment interest, and costs.

84.   **Typicality**:  Plaintiffs have substantially the same interest in this matter as all other proposed Class Members and their claims arise out of the same set of facts and conduct as all other Class Members. Plaintiffs and all Class Members purchased the Class Rapid Release Gelcaps. All of the claims of Plaintiffs and Class Members arise out of Walmart's false, misleading, deceptive, and unfair conduct. Common to Plaintiffs' and Class Members' claims is Walmart's conduct in marketing, advertising, warranting, and/or selling the Class Rapid Release Gelcaps and Plaintiffs and Class Members' purchase of the Class Rapid Release Gelcaps.

85.   **Adequacy of Representation**:  Plaintiffs are committed to pursuing this action and has retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of Class Members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiffs have no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

86.   The elements of Rule 23(b)(2) are met. Walmart will continue to commit the violations alleged, and Plaintiffs, Class Members and the general public will be subject to and continue to suffer from the same or substantially similar deceitful marketing. Walmart has acted on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

87.   The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only the individual Class Members and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Walmart, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

**TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS**

88.    Any applicable statutes of limitations have been tolled by Walmart's knowledge, actual misrepresentations, and/or denial of the facts as alleged herein.

89.    Alternatively, the facts alleged herein give rise to estoppel. Walmart was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Rapid Release Gelcaps. At all relevant times and continuing to this day, Walmart misrepresented the true character, quality, and nature of the Class Rapid Release Gelcaps. Representations which it knew or should have known were false, misleading, unfair, and/or deceptive. Plaintiffs and Class Members reasonably relied on Walmart's misrepresentations of material facts. Based on the allegations contained herein, Walmart is estopped from prevailing on any statute of limitations defense in this action.

90.    Additionally, Walmart is estopped from raising any defense of laches due to its own unclean hands.

**CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW ("FAL") BUSINESS AND PROFESSIONAL CODE § 17500**

**(Plaintiffs Individually and on Behalf of the California Class)**

91.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

92.    California Business & Professions Code § 17500 states:

"It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other

> publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

93.    California's FAL prohibits not only false advertising, but also advertising which is misleading, even if true, and advertising that has a capacity, likelihood, or tendency to deceive of confuse the public.

94.    Walmart caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Walmart, to be untrue and misleading to consumers, including Plaintiff and the other Class Members.

95.    Walmart has violated § 17500 because the misrepresentations and omissions regarding the speed and capability of its Class Rapid Release Gelcaps as set forth in this Complaint were material and likely to deceive a reasonable consumer.

96.    Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Walmart's false, unlawful, misleading, unfair, and/or deceptive practices. In purchasing their Class Rapid Release Gelcaps, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Walmart with respect to the speed and capability of the Class Rapid Release Gelcaps. Walmart's representations were untrue because the Class Rapid Release Gelcaps were manufactured and sold with the same acetaminophen medicine used in its other Walmart products and the Class Rapid Release Gelcaps worked slower, rather than faster, than the other non-rapid release acetaminophen Walmart products. Had Plaintiffs and the other Class Members known this, they would not have purchased their Class Rapid Release

Gelcaps and/or paid as much for them. Accordingly, Plaintiffs and Class Members overpaid for their Class Rapid Release Gelcaps and did not receive the benefit of their bargain.

97.    All of Walmart's wrongful conduct alleged herein occurred in the course of Walmart's business.

98.    Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class Members any money Walmart acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief the Court deems necessary.

## COUNT II

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL") BUSINESS AND PROFESSIONAL CODE § 17200

### (Plaintiffs individually and on behalf of California Class)

99.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

100.    The California UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

101.    Walmart has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Rapid Release Gelcaps work slower than its other non-rapid release acetaminophen Walmart products. Walmart should have disclosed this information or at least not misrepresented the Class Rapid Release Gelcaps as rapid release suggesting that they worked faster than its other products because that was untrue and Walmart was in a superior position to know the true facts, and Plaintiffs

and Class Members could not reasonably be expected to learn or discover that true fact.

102.   These acts and practices have deceived Plaintiffs and are likely to deceive the public. By misrepresenting the true quality and nature of the Class Rapid Release Gelcaps to Plaintiff and the Class Members, Walmart violated the UCL, and caused injuries to Plaintiffs and Class Members. The misrepresentations and omissions by Walmart pertained to information that was material to Plaintiffs and Class Members' purchase decisions, as it would be material to all reasonable consumers.

103.   The injuries suffered by Plaintiffs and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition. The injuries that Plaintiffs and the Class Members suffered should have reasonably been avoided.

104.   Walmart's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313.

105.   Plaintiffs and Class Members seeks to enjoin further unlawful, misleading, deceptive, unfair, and/or fraudulent acts or practices by Walmart, obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and obtain all other relief allowed under California Business & Professions Code § 17200.

## COUNT III
### VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")
### CALIFORNIA CIVIL CODE § 1761
**(Plaintiffs individually and on behalf of the California Class)**

106. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

107. Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d). Plaintiffs and Class Members purchased one or more Class Rapid Release Gelcaps.

108. Walmart is a "person" within the meaning of California Civil Code § 1761(c).

109. In the course of Walmart's business, Walmart engaged in unfair and deceptive acts in violation of the CLRA by the practices described above. These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

110. Walmart's unfair or deceptive acts or practices occurred repeatedly in Walmart's trade or business and were capable of deceiving a substantial portion of the purchasing public.

111. Walmart knew or should have known that the Class Rapid Release Gelcaps were not more effective or faster-acting than its other, cheaper non-acetaminophen Walmart products.

112. Walmart was under a duty to Plaintiffs and the Class Members to disclose the true nature and quality of the Class Rapid Release Gelcaps because:

SECOND AMENDED CLASS ACTION COMPLAINT

a.     Walmart was in a superior position to know the true state of facts about the Class Rapid Release Gelcaps;

b.     Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Rapid Release Gelcaps did not conform to Walmart's representations;

c.     Walmart knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the true quality and nature of the Class Rapid Release Gelcaps; and

d.     Walmart failed to disclose the truth about the Class Rapid Release Gelcaps to Plaintiff and Class Members.

113.    In misrepresenting the speed and capability of the Class Rapid Release Gelcaps as well as failing to disclose the true quality and nature of the Class Rapid Release Gelcaps, Walmart has misrepresented and/or concealed material facts and breached its duty not to do so.

114.    The facts misrepresented and/or not disclosed by Walmart to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Rapid Release Gelcaps or pay a lesser price for the Class Rapid Release Gelcaps. Had Plaintiffs and Class Members known this information, they would not have purchased the Class Rapid Release Gelcaps or would have paid less for them.

115.    Plaintiff Edwards provided Walmart with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and seeks injunctive relief. The 30-day notice period has expired, accordingly, Plaintiffs also seek monetary damages under the CLRA.

116.    Plaintiffs and Class Members' injuries were proximately caused by Walmart's unfair and deceptive business practices.

117.    Therefore, Plaintiffs and Class Members are entitled to equitable relief under the CLRA.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask the Court to enter judgment awarding the following relief:

A.     An order certifying the proposed California Class;

B.     An order awarding Plaintiffs and Class Members their actual damages, punitive damages, and/or any other monetary relief provided by law;

C.     An order awarding Plaintiffs and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.     An order requiring Walmart to adequately represent the true nature, quality, and capability of the Class Rapid Release Gelcaps;

E.     An order (a) issuing a nationwide recall of the Class Rapid Release Gelcaps to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps; and (c) immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

F.     An order granting declaratory and/or injunctive relief as allowable under state and federal law;

G.     An order awarding Plaintiffs and Class Members pre-judgment and post-judgment interest as allowed by law;

H.     An order awarding Plaintiffs and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

I.     An order awarding such other and further relief as this Court may deem just and proper.

# JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all

SECOND AMENDED CLASS ACTION COMPLAINT

issues so triable under the law.


DATED:  August 23, 2021          Respectfully submitted,


                                 */s/ Mitchell M. Breit*
                                 Mitchell M. Breit (*pro hac vice*)
                                 **MILBERG COLEMAN BRYSON**
                                 **PHILLIPS GROSSMAN, PLLC**
                                 100 Garden City Plaza
                                 Garden City, New York 11530
                                 Tel: (347) 668-8445
                                 Fax: (212) 868-1229
                                 mbreit@milberg.com

                                 Gregory F. Coleman (*pro hac vice*)
                                 Adam A. Edwards (*pro hac vice*)
                                 Mark E. Silvey (*pro hac vice*)
                                 **MILBERG COLEMAN BRYSON**
                                 **PHILLIPS GROSSMAN, PLLC**
                                 First Horizon Plaza
                                 800 S. Gay Street, Suite 1100
                                 Knoxville, Tennessee 37929
                                 Tel: (865) 247-0080
                                 Fax: (865) 522-0049
                                 gcoleman@milberg.com
                                 aedwards@milberg.com
                                 msilvey@milberg.com

                                 Crystal Foley (SBN 224627)
                                 **SIMMONS HANLY CONROY**
                                 100 N. Sepulveda Blvd., Suite 1350
                                 El Segundo, California 90245
                                 Tel: (310) 322-3555
                                 Fax: (310) 322-3655
                                 cfoley@simmonsfirm.com

                                 Thien An V. Truong (*pro hac vice*)
                                 **SIMMONS HANLY CONROY**

27

112 Madison Avenue
New York, New York 10016-7416
Tel: (212) 784-6400
Fax: (212) 213-5949
atruong@simmonsfirm.com

Eric S. Johnson (*pro hac vice*)
**SIMMONS HANLY CONROY**
One Court Street
Alton, Illinois 62002
Tel: (618) 259-2222
Fax: (618) 259-2251
ejohnson@simmonsfirm.com

Jason O. Barnes (*pro hac vice*)
**SIMMONS HANLY CONROY**
231 S. Bemiston Avenue, Suite 525
St. Louis, Missouri 63105
Tel: (314) 259-6700
Fax: (618) 259-2251
jaybarnes@simmonsfirm.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2021, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/*Mitchell M. Breit*

28

SECOND AMENDED CLASS ACTION COMPLAINT